| CHARGE OF DISCRIMINATION<br><br>This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | AGENCY<br>☐ FEPA<br>☒ EEOC | CHARGE NUMBER |
|---|---|---|

<u>COLORADO CIVIL RIGHTS DIVISION</u> and EEOC
State or Local Agency, If any

| NAME (Indicate Mr., Ms., Mrs.)<br>Ms. Abby Martin, on behalf of herself and others similarly situated | HOME TELEPHONE (Include Area Code)<br>(303) 908-5707 | |
|---|---|---|
| STREET ADDRESS<br>10599 West Warren Drive | CITY, STATE AND ZIP CODE<br>Lakewood, CO 80227 | DATE OF BIRTH<br>July 9, 1981 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one, list below)

| NAME<br>Park County Sheriff's Office | NUMBER OF EMPLOYEES, MEMBERS<br>more than 15 | TELEPHONE (Include Area Code)<br>(719) 836-2494 |
|---|---|---|
| STREET ADDRESS<br>P.O. Box 604 | CITY, STATE AND ZIP CODE<br>Fairplay, CO 80440 | COUNTY<br>Park |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box (es))<br><br>☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ AGE<br><br>☒ RETALIATION  ☐ NATIONAL  ☒ DISABILITY  ☒ OTHER<br>Constructive Discharge (specify) | DATE DISCRIMINATION TOOK PLACE<br>EARLIEST (ADEA/EPA)   LATEST (ALL)<br>Nov. 2009                                ongoing<br><br>☒ CONTINUING ACTION |
|---|---|

THE PARTICULARS ARE:

1. I, Abby Martin, am a female with a disability and am thus a member of the class of persons protected by Title VII of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act ("ADA"), as amended.

2. Respondent, Park County Sheriff's Office ("PCSO"), is an employer within the meaning of Title VII and the ADA during all relevant time periods.

3. Since November 2, 2009, I have been employed by PCSO as a Sheriff's Deputy.

4. Corporal Kelley Reynolds was the first field training officer ("FTO") I was assigned to after I was hired. Shortly after I became employed by PCSO, Mr. Reynolds blurted out in front of me and other Park County employees that "Park County does not need to be hiring any more female deputies."

5. I interpreted the comment to mean that Corp. Reynolds did not believe females should be deputies, and did not want to train me because I am a female deputy. I thus reported his blatantly discriminatory comment to Deputy Kolby Martin. Deputy Martin reported my complaint to Master Sergeant Mike Brown.

6. In mid-November, 2009, PCSO Captain, Mark Hancock, approached me and asked if I was offended by Corp. Reynolds' comment. I responded that I was offended because I was as qualified as any male deputy and had spent a lot of time training with the SWAT team as a Reserve Deputy prior to becoming a full time employee

7. Immediately after a staff meeting on November 18, 2009, Master Sgt. Mike Brown and PCSO FTOs, including Corp. Reynolds, Corporal Dean Morgan and Corporal Rick Paige, pulled me aside, called me a "traitor" because I had reported Corp. Reynolds' comment, then belittled me and began to harass me whenever an opportunity arose.

8. Although Corp. Reynolds was removed from the FTO position in November 2009, PCSO later reinstated him to the FTO position.

9. After Corp. Reynolds was removed from the FTO position, Corp. Paige was assigned as my FTO trainer. Corp. Paige thereafter retaliated against me for my complaint against Corp. Reynolds by reminding me about it every

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
FORM 5 – CHARGE OF DISCRIMINATION, ADDITIONAL TEXT
ABBY MARTIN, ON BEHALF OF HERSELF AND OTHERS SIMILARLY SITUATED, CHARGE NO. _____

*AM*
Charging Party Initials

week, and taking every opportunity to humiliate and/or harass me. For example, he would call dispatch and instruct them to disregard my requests. Likewise, Corp. Paige was rude, yelled, and degraded me on the radio for the rest of the department to hear, then would instruct me to change radio channels to our "tac" channel, where he would continue to harass me. He was so rude that, in June 2010, another deputy commented on it and asked me what was going on with him.

10. Corp. Paige would further call me at home after work to harass me. For instance, on my birthday, Friday, July 9, 2010, Corp. Paige called me at home to tell me that I was in "big trouble" for making a mistake at the jail. When I returned to work three days later, I asked what I had done wrong and was advised that the jail staff had failed to train me on jail protocols during my field training.

11. Corp. Paige further tried to preclude me from participating with the other officers on PCSO "burrow days," for example, by providing assignments to me off site so that I would not be present.

12. After several months of constant harassment from Corp. Paige, I began experiencing gastrointestinal problems, for which medical treatment was required.

13. In the early summer months of 2010, I reported Corp. Paige's retaliation and harassment to Master Patrol Deputy Jeff DeBerry, and requested to be assigned a new supervisor. Master Patrol Deputy DeBerry reported this up through his chain of command, but nothing was done, and I was not assigned a new supervisor.

14. In further retaliation for my complaint of gender discrimination, in June 2010, I was denied a shift for which I had bid, while all of the other deputies were granted the shifts for which they had bid. On or about June 23, 2010, I met with Sgt. Glenn Hardey about the denial of my shift bid. In violation of PCSO policy and procedure, Sgt. Hardey told me "you do not have seniority here and you will work where we tell you to work." I was further denied overtime shifts that summer while other similarly situated PCSO deputies were given overtime shifts.

15. On or about June 30, 2010, I had a meeting with Master Sgt. Mike Brown, Corp. Greg Flint, Sgt. Hardey, and Corp. Paige, during which I attempted to get assistance to stop Corporal Paige's retaliatory harassment, and disputed the denial of my bid for a different shift. Rather than address Corp. Paige's harassment, as required by law and PCSO policy and procedure, Master Sgt. Mike Brown told me during this meeting that if I raised any more concerns, I would not make it through my probationary period.

16. In retaliation for my complaints about discrimination and retaliation, Master Sgt. Brown denied training opportunities I had requested during the latter half of 2010. For example, Sgt. Brown denied me long gun training that was free to the PCSO. This was a safety issue in that I was denied a shotgun or rifle for almost two years, until Corp. Greg Flint finally noticed I did not have a long gun and insisted that I be certified in October 2010.

17. On or about August 11, 2010, I was in the squad room talking to Deputy Shawn Olivett when Sgt. Brown walked out of his office, looked at me, and said, "Can't you go somewhere else and leave? You are annoying!"

18. In or about October 2010, PCSO hired a new deputy, Welles Tonjes. Deputy Tonjes was quickly promoted to corporal, then to sergeant.

19. After Corp. Paige left the PCSO, Sgt. Hardey was assigned as my direct supervisor. Sgt. Hardey demonstrated hostility and retaliated by refusing to communicate directly with me, and forwarding all orders through other PCSO staff.

20. In December 2010, Sgt. Hardey wrote me up for three alleged incidents, none of which was determined to be

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
FORM 5 – CHARGE OF DISCRIMINATION, ADDITIONAL TEXT
ABBY MARTIN, ON BEHALF OF HERSELF AND OTHERS SIMILARLY SITUATED, CHARGE NO. _____

*AM*
Charging Party Initials

founded, in an attempt to subject me to disciplinary action and termination. This was in retaliation for my previous complaint against Corp. Reynolds.

21. In or about December 2010, Sgt. Hardey told PCSO Detective Yoshi Goto, "I'm going to do everything I can to get [Abby Martin] back on probation and out of here."

22. In or about December 2010 I had a meeting with Captain Mark Hancock regarding the hostile and abusive working environment and harassment by Corp. Hardey. During this meeting, I advised Captain Hancock that I had consulted a Fraternal Order of Police attorney, and requested that he do something to stop the ongoing retaliation and harassment. In violation of federal law and PCSO policy and procedure, Captain Hancock advised me that if I sought legal assistance and sued the department, it would be detrimental to my career in law enforcement.

23. In or about March 2011, PCSO assigned me to a School Resource Officer ("SRO") position. I received no training for the SRO position, and was required to wear full uniform, including a bullet proof vest and duty belt, whenever I was on duty.

24. On or about May 10, 2011, while speaking to students for a "Career Day" event at Fitzsimmons Middle School, PCSO Commissioner, John Tighe, asked me to stand in front of each of the classes to show off the uniform and do the "Barbie dance" which involved putting one hand on my head, one on my hip, shaking my hips and saying "hubba hubba hubba." Afterwards, I filed a sexual harassment complaint with the PCSO, and requested a transfer back to my position as a patrol officer.

25. After PCSO granted my request to transfer back to a patrol position and a replacement was hired for the SRO position, the new SRO received training which I had been denied. The new SRO was not required to wear full uniform, bullet proof vest and duty belt whenever he was on duty. PCSO instead provided the new SRO a modified uniform, while my requests for a modified uniform had been denied.

26. In retaliation for my protected conduct in complaining about gender discrimination, retaliation and harassment, during the period from October 2010 through May 2011, Corp. Reynolds, Sgt. Hardey and other PCSO officers failed to communicate and/or provide backup in circumstances in which backup was required for my safety.

27. For example, on or about October 27, 2010, dispatch reported a call concerning a man who was walking on Highway 285, south of Fairplay, possibly waiving a shotgun. I was in the area at the time, and notified dispatch that I would contact the individual and tell them what I found. I promptly contacted dispatch to confirm that the man appeared to be waiving a shotgun, then contacted the suspect. Corp. Reynolds was supposed to have reported to the scene as backup and advised dispatch that he was *en route* from the Sheriff's office. However, when Sergeant Tonjes arrived and asked where my backup was, I told him that Corp. Reynolds was my backup and I did not know where he was. I later learned that, rather than provide backup, Corp. Reynolds was at the Sheriff's office surfing the internet, in violation of PCSO policy and procedure. To my knowledge, Corp. Reynolds was never disciplined for his failure to provide backup in what could have been an extremely dangerous situation.

28. By way of further example, prior to my transfer back to a patrol position, on the last day of school in May 2011, while I was still serving as SRO, we received a call that students at Platte Canyon High School planned to spray other students with a substance identified as carbonated urine. Although, Corp. Reynolds was to be my backup that morning, in retaliation for my protected conduct in reporting his discriminatory statement, he failed to respond, and failed to advise me that he was even en route until thirty minutes after school ended.

29. On or about May 10, 2011, I reported Corp. Reynolds' retaliatory conduct in failing to provide backup to my

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
FORM 5 – CHARGE OF DISCRIMINATION, ADDITIONAL TEXT
ABBY MARTIN, ON BEHALF OF HERSELF AND OTHERS SIMILARLY SITUATED, CHARGE NO. _____

AM
Charging Party Initials

supervisor, Sgt. Welles Tonjes, and further advised Sgt. Tonjes about the discriminatory comment Reynolds had made in November 2009.

30. On or about May 26, 2011, Corp. Reynolds told Detective Yoshi Goto, "I don't care what it takes, I'm going to get Officer Abby Martin out of here." When I reported this threat to Sgt. Tonjes and Sgt. Brown, they responded "why should we do anything about it?"

31. During the time that I served as SRO, I suffered an off-duty back injury. I repeatedly reported to Sgt. Tonjes that wearing 50 lbs. of gear, including a duty belt, was aggravating my back injury, and requested an accommodation of working without a duty belt. This accommodation was denied and I was not allowed to remove the duty belt while on duty.

32. My back injury worsened and, on or about June 21, 2011, I advised Sgt. Tonjes that I needed to have back surgery. Sgt. Tonjes immediately responded: "Well, you might as well plan on getting your walking papers because command staff is not going to put up with you having surgery."

33. On or about July 1, 2011, I underwent microdisectomy surgery for my back injury. Pursuant to the ADA and Family and Medical Leave Act ("FMLA"), I requested a medical leave of absence. I was later released to light duty effective August 1, 2011.

34. When I returned to light duty on August 1, 2011, Sgt. Tonjes told me that my husband, fellow-Deputy Kolby Martin, could drive me to the office, but he was not allowed to set foot in the office while I was working, even though other married county employees were allowed to be in the office together.

35. After I returned to light duty, Deputy Brandon Strehl began harassing me because I had a disabling medical condition for which I had taken a leave of absence, in violation of federal law and PCSO policy and procedure. For example, he made a sarcastic remark that "it must be nice to have a month off for vacation." Subsequently, on or about August 14, 2011, Deputy Strehl came to the Fairplay sheriff's office where I was working on a large child abuse case. I had several piles of papers organized on my desk. Deputy Strehl flipped me off, then knocked the files off my desk onto the floor, in violation of PCSO policy and procedure. When I asked him to pick them up, he refused stating that he was not a "fucking cheeto." When I reported Deputy Strehl's discriminatory and harassing conduct to my supervisor, Sgt. Tonjes, he laughed and told me Deputy Strehl is "like a little brother" who just likes to "pick on you" or "get under your skin."

36. On or about August 17, 2011, at approximately 5:45 p.m., after a PCSO staff meeting was held at the Jefferson/Como Fire Station, I approached Sgt. Tonjes and complained that I did not think my husband and I were being treated fairly since other couples were not prohibited from being in the office together. Sgt. Tonjes advised Master Sgt. Brown and they then walked me into the kitchen, closed the door and, when I tried to explain why I felt this was unfair, told me to "shut up." When I then complained that Sgt. Tonjes did not take my complaint about deputy Strehl seriously, Sgt. Tonjes exploded in a rage and began screaming "this is BULLSHIT!" while slamming his fists on the kitchen table approximately 6 inches from my chair. This closed door meeting was so hostile and abusive that I became afraid for my physical safety.

37. During this incident on August 17, 2011 Sgt. Tonjes threatened to make me work nights where I would not come into contact with the officer(s) who were harassing me. Master Sgt. Brown and Sgt. Tonjes then began arguing in front of me about who I would report to, and decided I would work a Monday through Friday shift under Master Sgt. Mike Brown. I was further advised that my husband could no longer drive me to the office.

38. The shift change and added restrictions were retaliatory in response to my complaints of sex and disability discrimination, harassment and retaliation. Prior to complaining about harassment from Deputy Strehl and unfair

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
FORM 5 – CHARGE OF DISCRIMINATION, ADDITIONAL TEXT
ABBY MARTIN, ON BEHALF OF HERSELF AND OTHERS SIMILARLY SITUATED, CHARGE NO. \_\_\_\_\_

*Charging Party Initials*

treatment, my husband was allowed to transport me to and from work in his patrol car. Because I did not have to drive to work, I was able to take the pain medications prescribed by my doctor, which aided in my recovery. After Sgt. Brown forbade my husband from driving me to work in his patrol car, I was no longer able to take my pain medications during the workday and my condition worsened. Due to the schedule change, I also had to use up accrued sick leave in order to attend physical therapy, rather than scheduling therapy on one of my days off.

39. In further retaliation, Sgt. Tonjes forbade everyone in the office from talking to me. On or about August 23, 2011 I was working in the front office chatting with Brenda Green while scanning reports, when Sgt. Tonjes walked in and asked in a very loud voice if I was "bothering Brenda." Although Ms. Green said "no," Sgt. Tonjes pulled her aside and told her that I was not to be talking to anyone.

40. After the August 17, 2011 incident, my back pain was exacerbated and I could no longer perform daily activities as I had done prior to August 17, 2011. By August 29, 2011, I was so anxious and stressed out due to the hostile work environment, and in so much physical pain that my doctor excused me from work.

41. On or about September 21, 2011, my doctor advised me that the prior surgery had failed, and scheduled me to undergo a lumbar fusion. The following day, I notified Sgt. Tonjes that I would require a second surgery.

42. On or about September 23, 2011, in response to notice that I would require an additional medical leave of absence, Sgt. Tonjes falsely notified me that PCSO no longer had any light duty work available for me.

43. I believe Sgt. Tonjes and the PCSO forced me to go on medical leave so that I would use up all of my paid sick leave and FMLA time with the goal of either inducing me to quit or setting up a pretext to fire me. This is because, on or about October 13, 2011, Sgt. Brown pulled my husband aside and told him that they were hiring for my position at the end of November 2011.

44. When I learned that PCSO was hiring for my position, I immediately requested a reasonable accommodation of a six week medical leave of absence under the ADA.

45. I underwent lumbar fusion surgery on October 18, 2011, and was again released from work during my recovery through November 28, 2011.

46. On or about October 31, 2011, I learned that PCSO was hiring for a detective position for which I was qualified and applied.

47. On or about November 15, 2011 a Park County Human Resources Coordinator informed me that I needed a doctor's note stating that I could sit all day for the open detective position test. Two days before the test, Park County Human Resources Coordinator, Cindy Gharst, reminded me via e-mail that PCSO required a doctor's note stating that I could sit all day for the test. A doctor's note was unnecessary given the fact that my doctor had already released me to light duty. Despite my efforts to get a note from my doctor, I was unable to get a note before the test day. Because of this, PCSO prohibited me from testing for the open detective position.

48. I believe that PCSO's refusal to allow me to test was retaliatory in response to my previous complaints of gender and/or disability discrimination and/or because of my disability, record of disability and/or perceived disability, and thus discriminatory in violation of Title VII and the ADA.

49. When I returned to light duty on November 29, 2011, I was ostracized by PCSO staff, who were ordered not to talk to me, and Sgt. Tonjes went into his office and slammed the door so hard that it shook the pictures on the walls.

50. Given all that has transpired, I believe that my physical and emotional health are at risk in this hostile and abusive

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**FORM 5 – CHARGE OF DISCRIMINATION, ADDITIONAL TEXT**
**ABBY MARTIN, ON BEHALF OF HERSELF AND OTHERS SIMILARLY SITUATED, CHARGE NO. _____**

Charging Party Initials

working environment. I further believe, base on the facts set forth herein, that if I complain about ongoing harassment and retaliation, the hostility toward me will only increase.

51. PCSO has discriminated against me due to my sex (female) and due to a disability, record of disability and/or perception of disability, in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act, as amended.

52. PCSO has further continuously retaliated against me for reporting gender discrimination, sexual harassment and disability harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act, as amended.

53. PCSO has further created a hostile and abusive working environment in which no reasonable person could continue to work. I thus believe that PCSO has constructively discharged me because of a disability, record of disability and/or perception of disability, and/or in retaliation for my protected conduct in reporting sex discrimination, sexual harassment, retaliation, and harassment due to a disability, in violation of Title VII and the ADA.

***TEXT CONTINUED ON ATTACHED SHEET***

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY (When necessary for State & Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charges and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct | SIGNATURE OF COMPLAINANT |
| Date 1/3/12   Charging Party (signature) | Subscribed and sworn to before me this date (Day, month, and year) 1.3.12 |

EEOC FORM 5 (Test 10/94)

My Commission Expires 01-26-2015