U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

| | |
|---|---|
| Charge No. 541-2012-01025 ) | |
| ) | |
| IN THE MATTER OF: ) | |
| ) | |
| ABBY MARTIN, ) | **POSITION STATEMENT** |
| ) | |
| CHARGING PARTY, ) | |
| ) | |
| vs. ) | |
| ) | |
| PARK COUNTY SHERIFF'S ) | |
| OFFICE ) | |
| ) | |
| RESPONDENT. ) | |

RESPONDENT PARK COUNTY SHERIFF'S OFFICE, by its attorneys, Hayes, Phillips, Hoffmann & Carberry, P.C., submits the following statement of Position in response to the Charge of Discrimination filed by Abby Martin ("Martin").

## PARK COUNTY'S POSITION

The County's position is that the allegations of the Charging Party, Abby Martin, as set forth in her Charge of Discrimination (the "Charge"), do not state a valid claim for sex discrimination or retaliation under Title VII of the Civil Rights Act of 1964, nor do they support a claim for violation of the Americans with Disabilities Act ("ADA").

During her brief employment with Park County, Martin made two complaints regarding alleged sex discrimination. Both were fully and vigorously investigated and in each instance the offender was disciplined. Park County maintains a zero tolerance policy regarding sex harassment as Martin's experience shows.

Moreover, Martin has failed to establish any adverse employment action taken against her. None of the facts alleged by her even arguably rise to the level of a "constructive discharge." She voluntarily terminated her employment with Park County and has failed to identify any other adverse employment action to support her claims of sex discrimination and retaliation. In the absence of some materially adverse employment action her Title VII claims fail as a matter of law.

As to Martin's ADA Act claim, Martin is not, under settled law, "disabled" within the meaning of the ADA. Even if Martin was able to establish the threshold requirement of being a person with a disability, the undisputed facts show that every single request she made to accommodate her recovery from surgery was granted by the County.

## FACTS

1. The County of Park (the "County") is a Colorado county organized and existing pursuant to Title 30 of the Colorado Revised Statutes. The County employs more than fifteen persons.

2. The Park County Sheriff's Office ("PCSO") is an agency of Park County, although it is not a separate legal entity or "employer" as alleged in the Charge of Discrimination.

3. On or about May 6, 2009, Martin (then known as Abby Adam) submitted an Application for Employment and Personal History Statement (the "Employment Application") to PCSO. A copy of Martin's Employment Application is attached as **Exhibits A.**

4. According to her Employment Application, Martin received her conditional certification from Colorado Peace Officer Standards and Training ("POST") on December 19, 2008. She was hired as a police officer by the City of Golden, Colorado on January 5, 2009 but, again according to her application, left that position after some four months, on May 17, 2009, for the reason that "training was not a fit."

5. Commencing on or about June 30, 2009, Martin began serving as a reserve deputy with PCSO, working an average of approximately 10 hours per week, riding with PCSO patrol deputies. This was apparently a good experience for her. By letter dated September 23, 2009 she stated: "I am very impressed with the training that I have received from the deputies in Park County and look forward to the opportunity to work as part of the team on a full-time basis." A copy of the September 23, 2009 letter is attached hereto as **Exhibit B.**

6. Martin successfully tested for the position of deputy on October 7, 2009 and was appointed to that position on or about November 2, 2009.

7. On November 15, 2009, Sheriff's Deputy Kolby Martin (Martin's then-boyfriend and now her husband) informed Senior Sergeant Mike Brown that Abby Martin was unhappy with her training under Field Training Officer Corporal Kelley Reynolds. Specifically as it bears on this matter, Kolby Martin reported that Corporal Reynolds had remarked: "I hope this department is done hiring females."

8. Although this information was second hand and had not been reported by Abby Martin as required by the Park County Employee Handbook, PCSO nonetheless immediately commenced an investigation which resulted in the issuance of a November 25, 2009 report confirming the statement and finding that Corporal Reynolds had violated the Park County policies prohibiting sex harassment and discrimination and recommending that Reynolds be disciplined. A copy of the November 25, 2009 report is

attached hereto as **Exhibit C.** Based on the findings and recommendations of the report, Corporal Reynolds was immediately removed from the position of field training officer and subsequently demoted to deputy. Kelley Reynolds has resigned from the PCSO effective this spring and has enlisted in the Army.

9. As Martin correctly states in her Charge of Discrimination, Corporal Rick Paige replaced Kelley Reynolds as Martin's field training officer. Her Charge lists a litany of alleged rudeness and slights on Paige's part that she states occurred during her training period. Martin dramatically characterizes these incidents as "constant harassment." Martin states that she informed a master patrol deputy, Jeff DeBerry, of her problems with Corporal Paige and that "DeBerry reported this up through his chain of command, but nothing was done and I was not assigned a new supervisor." Charge at ¶ 13.[1]

10. Park County very much disputes Martin's representation of these occurrences. Even accepting Martin's version of events as true, however, the undisputed fact is that she did not report these alleged instances of discrimination and retaliation to anyone in a position to do anything about it. Obviously, a master patrol deputy is lower on the chain of command than a corporal and could neither discipline nor reassign a corporal such as Corporal Paige. DeBerry was not Martin's supervisor. Martin's allegation that her complaints to DeBerry were reported up through the chain of command is obviously pure supposition on her part and is, in fact, untrue. Most importantly, if she truly believed that Corporal Paige's conduct was sex discrimination, harassment or retaliation Martin was specifically **required** by Park County's Employee Handbook to report the matter to her supervisor or the Human Resources Administrator. The Employee Handbook states, in pertinent part, as follows:

> 1) Any employee who believes that he or she has been the subject of sexual or other unlawful harassment by anyone including a supervisor, co-worker, or other person in the workplace **must report the alleged conduct immediately** to his or her supervisor, department director, elected official, County administrator or other designated party or the Human Resources Administrator. . . . Failure to notify the County promptly hinders the County from taking effective action.
>
> 2) If the complaint involves a department director, County administrator or other designated party, or elected official who is the employee's immediate supervisor, or if the employee is uncomfortable for some reason making the report to those particular people, the complaint shall be filed directly with the Human Resources Administrator.

---

[1] The EEOC may detect a pattern here. Both at Golden and in Park County, Martin consistently resented and resisted her training. By her own admission she left Golden Police Department after only four months because the "training was not a fit." She successfully sought the replacement of her first training officer at Park County and claims that the PCSO'd failure to also replace her second training officer based on complaints to a fellow deputy constitutes sex discrimination and retaliation.

3

Park County Employment Handbook at pp. 4-5. A copy of the Employee Handbook is attached as **Exhibit D.**

   11. Martin's Charge of Discrimination goes on to recite a number of instances where she believes she was treated unfairly. These include allegations that: (i) she did not receive every training opportunity she requested in the later half of 2010 (Charge ¶ 16); (ii) an alleged comment in the squad room which she quotes as "Can't you go somewhere else and leave" (Charge ¶ 17); the fact that another officer was promoted more quickly than she (Charge ¶ 18);[2] the allegation that her next supervisor, Sergeant Glen Hardey, was rude to her, wrote her up for misconduct, and told another PCSO officer that "I'm going to do everything I can to get [Abby Martin] back on probation and out of here;" (Charge ¶¶ 19, 20 and 21); the fact that as the assigned school resource officer (SRO) at Platte Canyon High School complex she was required to wear the standard uniform, including body armor, and was not given what she felt was appropriate training. (Charge ¶¶ 23 and 25);[3] and alleged failures by her superiors to communicate with her or provide immediate backup (Charge ¶¶ 26, 27 and 28).

   12. Once again, Martin evidences an inability to work with her supervisors and other superiors. She speculates that this is attributable either to her gender or to her complaint regarding Corporal Reynolds. Again, even accepting her version of events as true, she fails to allege facts proving, or even suggesting, that the conflicts in which she claims to have been perpetually embroiled were in any way related to her sex or her previous complaints.

   13. Martin correctly states that in May of 2011 she filed a sex harassment complaint against Park County Commissioner John Tighe. A copy of her written complaint is attached as **Exhibit E.** Commissioner Tighe, a former PCSO deputy, was speaking to students at "Career Day" at Fitzsimmons Middle School. He employed a relaxation or "Brain Break" technique he had learned as part of his training to become a D.A.R.E. ("Drug Abuse Resistance Education") instructor which was actually referred to as the "Barbie Cheer." Martin seems to suggest that only she was singled out to perform the "Barbie Cheer" when actually all of the attending students also participated.

   14. Martin neglects to inform the EEOC that her complaint against Commissioner Tighe was immediately and extensively investigated by the Park County Human Resources Administrator. During the investigation, and specifically on May 12, 2011, Martin, for the first time, advised the Human Resources Administrator of some of the problems listed in her Complaint herein. A detailed report was prepared by Human Resources Administrator Cindy Gharst. A copy of that report, dated June 6, 2011, is attached as **Exhibit F.**

---

[2] The officer in question, Welles Tonjes, was an experienced officer with over 35 years of service with the Denver Police Department behind him. He was promoted more quickly than Martin for the obvious reason that he was better qualified for command than a new recruit to police work.

[3] Platte Canyon High School was the site of a hostage taking in 2006 in which one female student was killed. An objective observer might conclude that the PCSO's requirement that Martin wear body armor and standard police gear was an example of concern for her safety rather than evidence of discrimination.

15. The investigation concluded that, while Commissioner Tighe's request that Martin and the students perform the "Barbie Cheer" did not rise to the level of sexual harassment "it is conclusive that it was not appropriate for the work place and is not condoned." Martin was informed of the result of the investigation in writing on June 8, 2011. A copy of that notification is attached as **Exhibit G**.

16. The remainder of Martin's Charge consists of another series of alleged slights and rude behavior on the part of fellow employees as well as an apparent contention that the County's handling of her back surgery and recuperation violated the ADA.

17. The County's position is that most if not all of the incidences of rudeness recited by Martin either did not occur or are vastly overblown. However, even if every one of them happened exactly as alleged by Martin, the law is settled that such behavior does not, as a matter of law, rise to the level of sex harassment or prohibited retaliation.

18. As to the ADA complaint, the fundamental problem is that recuperation and recovery from surgery is not, under settled law, a "disability" within the meaning of the ADA. Even if it were, the County bent over backwards to accommodate every demand made by Martin, no matter how unreasonable, as will be discussed below.

## RESPONSE TO SPECIFIC ALLEGATIONS

**Sex Discrimination:**

Although Martin's Charge of Discrimination is not a model of clarity, it seems that she is trying to allege hostile work environment sex discrimination. The elements of such a claim are well-settled in the Tenth Circuit.

> 'To establish [that] a sexually hostile work environment existed, a plaintiff must prove the following elements; (1) She is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) [due to the harassment's severity or pervasiveness], the harassment altered a term, condition, or privilege of plaintiff's employment and created an abusive working environment.' *Dick [v. Phone Directories, Inc.,]* 397 F.3d [1256] at 1262-63 (alteration in original).
>
> But even if a plaintiff satisfies these elements, the plaintiff must identify one of three alternative bases for holding her employer liable under Title VII. The basis alleged here is that the employer was negligent or reckless. Under this theory, Ms Renner was required to prove a fifth element of

5

her claim: that the Harsco Corporation had actual knowledge of the hostile work environment but did not adequately respond to notice of the harassment. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (1oth Cir. 1998).

*Harsco Corporation v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007). *See also Pumphrey v. Lifescan, Inc.*, 2010 WL 417414 (D. Utah 2010).

In other words:

In order to overcome summary judgment on a hostile environment claim, plaintiff "must show that a rational jury would find that the workplace is permeated with discriminatory intimidation, ridicule, and insult that it sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Penry v. Federal Home Loan Bank*, 155 F.3d 1257, 1261 (10th Cir. 1998).

*Thomas v. Corrections Corporation of America*, 2010 WL 565272 (W.D.Okla. 2010).

Even where a plaintiff has met its *prima facie* burden of establishing these elements a hostile work environment claim will not lie where the employer had a sex harassment policy in place, and the employee failed to avail herself of its protection. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

Applying the legal precepts set forth above to the facts of this matter it is clear that Martin has not been the victim of sex discrimination under Title VII.

First, even accepting Martin version of events as true, she has failed to establish that the harassment altered a term, condition, or privilege of plaintiff's employment and created an abusive working environment. Martin has not alleged facts establishing that she suffered any "adverse employment action" at all. She was not demoted, she was not transferred to a less desirable shift or location, she was most certainly not terminated or dismissed from her employment.

Second, she has failed to establish that that the County had actual knowledge of the purported hostile work environment but did not adequately respond to notice of the harassment. To the contrary, the undisputed facts show that on the two occasions that the County learned of alleged sex discrimination involving Martin the allegations were immediately investigated and dealt with promptly and forcefully. Her field training officer, Kelley Reynolds was removed from that position and demoted based on an inappropriate comment that "I hope this department is done hiring females." This occurred even though the County learned of the incident via hearsay because Martin failed to report it, in violation of the County's Employee Handbook. Later a County Commissioner was found to have engaged in inappropriate conduct even though the

"Barbie Cheer" was a training tool he had learned as a D.A.R.E instructor. It is, frankly, impossible to imagine what more the County could have done.

Third, the County had a sex harassment policy in place which Martin failed to avail herself of. Instead, as discussed above, she apparently kept a journal of every criticism, every slight (real or imagined), and every denied request for training or special consideration for use in bringing this Charge, without ever bringing these matters to the attention of the County's Human Resources Department, as required by the County's Employment Manual, until May of 2011 when it was too late to effectively investigate them.

Park County is vigilant and active in prohibiting hostile work environment sex harassment, as its actions in this matter demonstrate. Martin has failed to articulate even an arguable case of hostile work environment sex harassment.

**Retaliation.**

Martin's Charge of Discrimination also asserts a claim for retaliation against her based on her complaint regarding Kelly Reynolds.[4] The elements of such a claim are well-settled.

> Te establish a prima facie case of retaliation, a plaintiff must demonstrate (1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 2414-15, 165 L.Ed.2d 345, (2006); *Miller v. Auto Club of N.M., Inc.*, 420 F.3d 1098, 1119 (10th Cir. 2005).

*Argo v. Blue Cross and Blue Shield of Kansas*, 452 F.3d 1193, 1202 (10th Cir. 2006); *Daniels v. United Parcel Service, Inc.*, 797 F. Supp. 1163, 1193 (D. Kan. 2011).

It is unclear that Martin passes even the first part of the three part test since she did not report the discriminatory statements made by Corporal Reynolds. Even assuming for purposes of this analysis that her boyfriend's report of Reynold's statement tranfers to her, and that she "engaged in protected opposition to discrimination," under settled law Martin has not alleged facts rising to the level of a "materially adverse" action.

In determining whether a challenged action is "materially adverse" the courts employ an objective standard. A plaintiff must show that a "reasonable employee would have found the challenged action materially adverse." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). This "avoids the

---

[4] The Park County Employee Handbook provides that "[a]ll employees shall be protected from coercion, intimidation, retaliation or discrimination for filing an complaint or assisting in an investigation." Park County Employee Handbook at 5.

7

uncertainties and unfair discrepancies that can plague a judicial effort to determine plaintiff's unusual subjective feelings." *Id.* At 68-69.

In approaching the question of whether an employer's actions were materially adverse, the Tenth Circuit, in the context of a retaliation claim brought by a Colorado county employee, has recently explained as follows:

> [W]e are obligated to bear in mind that "Title VII protects individuals 'not from retaliation' but only from retaliation 'that produces an injury or harm'" that itself rises to a "'level of seriousness.'" *Williams v. W.D. Sports, N.M, Inc.,* 497 F.3d 1079, 1087 (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)). To qualify under this standard, we held in *Williams* that a plaintiff must show "a reasonable employee would have found the challenged action materially adverse, which in this context means it might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (quoting *White,* 548 U.S. at 68, 126 S.Ct. 2405) (internal quotation marks omitted). "Requiring this level of adversity ... is necessary 'to separate significant from trivial harms.'" *Id.* (quoting *White,* 548 U.S. at 68, 126 S.Ct. 2405), "petty slights, minor annoyances, and simple lack of good manners," *White,* 548 U.S. at 68, 126 S.Ct. 2405. "Otherwise, minor or even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *MacKenzie v. City and County of Denver,* 414 F.3d 1266, 1279 (10th Cir. 2005) (quoting *Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir. 1996).

*Johnson v. Weld County, Colo.,* 594 F.3d 1202, 1216 (10th Cir. 2010).

Park County contends that Martin's description of the supposedly retaliatory actions of her fellow employees either did not occur or are highly dramatized. Even accepting them as true, however, the legal question presented is whether these alleged slights, annoyances and ill-mannered action were sufficiently adverse so as to "have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Johnson,* 594 F.3d at 1216.

We know that in fact these alleged acts of retaliation did NOT dissuade Martin from making a charge of discrimination. Following all of the actions complained of she, according to her own Charge, filed a second complaint of sex discrimination/harassment against a county commissioner in May of 2011.

Quite simply there was never any materially adverse action taken against Martin by her employer, Park County. Martin was apparently perpetually indignant at what she perceived as poor treatment from her peers and supervisors, but the fact remains that she was never the subject of any objectively adverse employment action. She fails to meet the second prong of a prima facie case of retaliation.

Nor does she meet the third part of the test, i.e. "a causal connection existed between the protected activity and the materially adverse action." It is incumbent on the plaintiff in a retaliation case to present evidence that retaliation "played a motivating part in the employment decision at issue." *Fye v. Oklahoma Corp. Commission*, 516 F.3d 1217, 1226 (10th Cir. 2008). While such evidence may be direct or indirect, mere supposition will not suffice. *See e.g. Twigg V. Hawker Beechcraft Corp.*, 659 F.3d 987 (10th Cir. 2011).

Here, Martin suggests that every example of ill-treatment by her fellow employees, real or imagined, was attributable to the Corporal Reynolds incident, but she offers no proof, direct or indirect, in that regard. It may be that some of her co-workers just didn't like her very much or were rude by nature. "Title VII . . . does not set forth 'a general civility code for the American workplace'" and the courts, like the EEOC, must "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *White*, 548 U.S. at 2415, 126 S.Ct. 2405. In the absence of at least some proof of retaliatory motive, Martin's Title VII retaliation charge fails as a matter of law.

In short, Martin has failed to even allege, much less prove, any facts that would even arguably state a claim for retaliation under Title VII.

**ADA Claim:**

Of the three claims asserted by Martin in her catch-all Charge of Discrimination, the ADA claim is particularly meritless both as a matter of law, and as a matter of fact.

First, Martin does not suffer from a disability. The law is settled that recovery from surgery is not a "disability" as that term is defined in the ADA.

> As defendant correctly points out, numerous cases have held that surgery-related absences from work and short-term working restrictions thereafter do not constitute a "disability" under the ADA. *See e.g. Heintzelman v. Runyon*, 120 F.3d 143, 145 (8th Cir. 1997) (employee's inability to work while recovering from surgery was not evidence of a permanent impairment under the ADA); *McDonald v. Pennsylvania Dept. of Public Welfare*, 62 F.3d 92, 95-97 (3d Cir. 1995) (holding that the inability to work for several months following surgery was not a disability under the ADA); *Evans v. Dallas*, 861 F.2d 846, 852-53 (5th Cir. 1988) (postoperative limitations are not an impairment under the Rehabilitation Act). Further injuries of temporary duration have repeatedly been held not to meet the definition of a "disability" under the ADA. *Se, e.g., Prsutti v. Felton Brush, Inc.*, 927 F. Supp. 545, 548-49 (D.N.H. 1995) (back injury, which kept plaintiff out of work for seven weeks, did not constitute a disability); *Blanton v. Winston Printing Co.*, 868 F.Supp. 804 (M.D.N.C. 1994) (knee injury of relatively short duration was not a "disability"

within the meaning of the ADA, even assuming it impaired a major life activity).

*Everist v. Blue Cross and Blue Shield*, 2000 WL 1708504 (D. Kan. 2000). *See also Pryor v. Trane Co.*, 138 F.3d 1024, 1028 (5th Cir. 1998) (rejecting plaintiff's assertion that her injury, surgery, hospitalization, and inability to work for two years established as a matter of law that she had a record of disability for purposes of the ADA); *Bateman v. American Airlines, Inc.*, 614 F.3d 660, 670 (E.D. Va. 2009) (holding that 28 month neck and back injury was not a disability under the ADA).

Martin's back injury and recovery from surgery were temporary in nature. Indeed, by now she is most likely fully recovered. Even her lawyers acknowledged in October of 2011 that "with surgery and a brief leave of absence, Deputy Martin's prognosis is nevertheless good and she is expected to return to full duty." Letter from Darold Killmer to Sheriff Fred Wagner dated October 13, 2011. Copy attached as **Exhibit H.** Martin was not and is not "disabled" within the meaning of the ADA.

Even if Martin were deemed disabled, however, Park County went to extraordinary lengths to accommodate her every request, no matter how petty or unreasonable.

Martin underwent back surgery on July 1, 2011. At her request she was given light duty assignments upon her return to work on August 1, 2011 even though the Park County Sheriff's Office is a very small department with the result that assigning a patrol deputy to light office duty works a serious hardship.

Beginning in October of 2011, Martin adopted the peculiar practice of communicating with her employer about her employment almost entirely through somewhat belligerent letters from her lawyers. The first of these letters was dated October 13, 2011 and is attached hereto as Exhibit H. It demanded that Martin be granted 6 weeks off for recover following her scheduled October 18, 2011 surgery. Martin had already exhausted her sick leave and 6 additional weeks would take her well beyond her FMLA leave period. Nonetheless, Park County granted her request.

The next letter was dated November 23, 2011. A copy is attached as **Exhibit I.** It stated, incorrectly, that the "County has directed [Martin] to return to light duty on November 28, 2011." Actually, Martin's doctor had released her to return to work on November 29, 2011, and the County, once again, had granted her request for light duty. The letter went on to demand that Martin be granted a "four/tens" schedule. That request was also granted and she was scheduled to work Monday through Thursday.

Martin then complained, through counsel, that she wanted Mondays off, and not Fridays to accommodate the schedule of her physical therapist. A copy of that letter is attached as **Exhibit J.** This request too was granted.

10

Martin next demanded that she be allowed to ride to work with her husband in his marked patrol car. This request was denied for obvious public safety reasons, since her husband was on duty and subject to emergency dispatched calls. In an extraordinarily gracious gesture, however, the County's Human Resources Director offered to arrange carpooling and even to personally drive Martin to work each day. The pertinent email is attached as **Exhibit K.**

Martin complains in her Charge that she was not allowed to return to work to test for the detective position. She neglects to mention that her own doctor had specifically directed that she not return to work until November 29, 2011, several days after the November 23, 2011 testing date. A copy of the report form issued by Rocky Mountain Spine Clinic is attached hereto as **Exhibit L.** The County advised Martin that if she could get her doctor to allow her to return to work for the testing (a somewhat grueling all day process) she would certainly be allowed to test, but she never produced the required medical release to work. Martin faults the County, and accuses it of retaliation against her, because the County obeyed her own doctor's orders.

Martin returned to light duty work on November 29 and 30, 2011. On December 2, 2011 the County received an email, once again from Martin's lawyers, stating that her doctor had changed his mind and that she could not return to work, even for light duty, for another two the three weeks. A copy of that email is attached as **Exhibit M.** Although Martin had exhausted all of her sick leave and FMLA leave the PSCO nonetheless granted her demand for an additional 2 to 3 weeks off.

On December 9, 2011, the County received an email from Martin's lawyers attaching a December 5, 2011 letter from her doctor addressed "To Whom it May Concern" stating: "At this point I believe the patient should be off of work for three months post surgically." A copy of that email and letter is attached as **Exhibit N.**

Finally, on January 6, 2012, Park County received a letter from Martin's lawyer, attached as **Exhibit O**, stating that she deemed herself constructively discharged and had filed the pending Charge of Discrimination with the EEOC. Since Martin had worked precisely two days (November 29 and 30, 2011) during the preceding three months, the suggestion that she felt that her working conditions had become intolerable is simply bizarre.

Park County is completely at a loss as to what more it could have done to "accommodate" Martin, even assuming she suffered from an ADA disability which, as a matter of law, she does not.

Martin has not even come close to establishing an ADA violation.

## CONCLUSION

The County did everything in its power to address Martin's complaints and demands. It investigated every complaint and granted virtually every request made by

11

her during her brief employment with the Sheriff's office. She has failed to articulate any facts which would support a charge of sex discrimination or retaliation under Title VII or violation of the ADA. Her claim should be denied.

Respectfully submitted this 22nd day of February, 2012.

HAYES, PHILLIPS, HOFFMANN & CARBERRY, P.C.

By: _____
Herbert C. Phillips, #8773
P.O. Box 1046
Fairplay, CO  80440
Telephone No.: 719-836-9005
Fax No.: 719-836-9010
Attorneys for Respondent Park County Sheriff's Office