IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00884-PAB-KMT

ABBY MARTIN,

      Plaintiff,

v.

FRED WEGENER, IN HIS OFFICIAL CAPACITY AS SHERIFF OF PARK COUNTY, CO

      Defendant.

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

      Defendant Fred Wegener, by and through counsel, Wells, Anderson & Race, LLC hereby submits his Motion for Summary Judgment as follows:

### BACKGROUND

      Plaintiff worked for the Park County Sheriff's Office ("PCSO") from June 2009 through January 2012, when she resigned.  Plaintiff's sole claim is for retaliation under Title VII of the Civil Rights Act. Plaintiff alleges that she was retaliated against and constructively discharged for complaining of gender discrimination.  As set forth below, Plaintiff cannot raise a genuine issue of material fact as to either claim, and summary judgment is appropriate.

### STATEMENT OF UNDISPUTED FACTS[1]

      1.    The PCSO is an agency of Park County, Colorado.  Since January 1999, Defendant Fred Wegener has been the Sheriff of Park County.  *See* Wegener Deposition (hereafter, "Wegener Dep."), P. 6 L. 15-17, attached hereto as **Exhibit 1**.

---

[1] Defendant reserves the right to dispute any facts asserted herein at trial.

2.      Sheriff Wegener is the only person with authority to hire, fire, promote, and demote deputies, and to determine their salaries.  Affidavit of Sheriff Fred Wegener (hereafter, "Wegener Aff."), Para. 3, attached as **Exhibit 2**.  Between November 2009 and January 2012, the PCSO employed approximately 14-17 patrol deputies. *Id*. Para. 2.

3.      Plaintiff Abby Martin (then Abby Adam) began serving as a reserve deputy with the PCSO on or about June 30, 2009, and became a full time deputy on November 2, 2009. Second Amended Complaint (hereafter, "Complaint"), 6/7/2013, Para. 9.

4.      When Plaintiff was a reserve, she met and began dating patrol deputy Kolby Martin.  K. Martin Deposition (hereafter, "K. Martin Dep."), P. 12 L. 4 – 25, **Exhibit 3**.

### a.  Plaintiff's Complaint Regarding Kelley Reynolds

5.      Corporal Kelley Reynolds was initially assigned as Plaintiff's field training officer ("FTO").  Complaint, Para. 10.

6.      In November 2009, Plaintiff complained to then boyfriend Kolby Martin that Corp. Reynolds made a comment that Park County should not be hiring female deputies. Plaintiff's Deposition (hereafter, "Plaintiff Dep."), P. 74 L. 14 – P. 78 L. 24, **Exhibit 4**.

7.       Plaintiff knew that the PCSO procedures did not permit her to make a complaint of harassment to a person of her same rank, such as Kolby Martin. *Id*. at P. 77 L. 14-18.

8.      The day after Plaintiff reported Reynolds' comment to Kolby Martin, Martin relayed Plaintiff's complaint to Sgt. Mike Brown. *Id*. at P. 78 L. 13-20; P.101 L. 1-21.

9.      Sgt. Brown investigated Plaintiff's complaint, determined that Corp. Reynolds' comments were inappropriate, counseled him, and submitted a written report. Brown Deposition (hereafter, "Brown Dep."), P. 14 L. 8 -  P. 18 L. 23, **Exhibit 5**; Deposition Exhibit 8, **Exhibit 6**.

2

10.     As a result of the complaint, Corp. Reynolds was demoted from the FTO position, and Plaintiff was re-assigned to Dean Morgan as her FTO. Plaintiff Dep., P. 89 L.10-19.

**b.     Plaintiff's Complaint Regarding Commissioner John Tighe**

11.     In or about March 2011, Plaintiff began serving as a School Resource Officer ("SRO"), and then Corporal (currently, Sergeant) Welles Tonjes became Plaintiff's immediate supervisor. Tonjes Deposition (hereafter, "Tonjes Dep."), P. 11 L. 24 – P. 13 L. 6, **Exhibit 7**.

12.      On May 10, 2011, Plaintiff was at a middle school assisting with Career Day. Park County Commissioner John Tighe spoke, and throughout his speech, he asked the students to do various cheers. At the end of his speech, which he conducted three times, he requested that Plaintiff lead the group in a "Barbie cheer," which consisted of putting her right hand on her head, left hand on her hip, and saying, "hubba, hubba, hubba."  Complaint, Para. 31.

13.     On May 10, 2011, Plaintiff told Corp. Tonjes about the incident.  Per Tonjes' instructions, Plaintiff submitted a written complaint to undersheriff Monte Gore. Tonjes Dep. P. 31 L. 2 -  P. 32 L. 22; Deposition Exhibit 3, **Exhibit 8**.

14.     Upon investigation, Human Resource administrator Cindy Gharst learned that the cheer was one of several Tighe learned in D.A.R.E. training. Gharst found that while the action did not rise to the level of sexual harassment, it was inappropriate and should not be condoned. Tighe was warned that his conduct was not appropriate. Gharst Deposition (hereafter, "Gharst Dep."), P. 24 L. 1 – P.34 L. 24, **Exhibit 9**; Deposition Exhibit 11, attached as **Exhibit 10**.

15.      On May 10, 2011, Plaintiff requested to be removed from the SRO position back to patrol deputy at the end of the school year on May 20, 2011. That request was granted. Plaintiff Dep. P. 206 L. 6 – P. 207 L. 7; Deposition Exhibit 4, attached hereto as **Exhibit 11**.

16.     As Tighe was an elected official, the PCSO had no authority to take action against him in his capacity as County Commissioner. Gharst Dep. P. 44 L. 17- P. 45 L. 19.

17.      Tighe was also an unpaid reserve deputy with the PCSO.  At the time of the incident, Tighe was working in his capacity as Commissioner. Brown Dep. P. 47 L. 8 – P. 48 L. 9.  Plaintiff has not alleged that she ever had to work with Tighe in his position as reserve deputy, nor had any contact with him since that incident.

18.     Shortly after she complained about Tighe, Corp. Reynolds allegedly failed to provide backup support to her when responding to a report regarding misconduct at Platte Canyon High School.  Plaintiff believes Reynolds' actions on this day stemmed from his "not liking me because I filed a complaint two years ago." Plaintiff Dep. P. 156 L. 11- P. 158 L.5.

### c.  Plaintiff's Back Surgeries/Light Duty Issues

19.     On July 1, 2011, Plaintiff underwent back surgery for an off-duty back injury. Complaint, Para. 41, 43.

20.     Plaintiff's doctor cleared her to return to work with restrictions on August 1, 2011. Effective that date, the County provided Plaintiff with light duty work, scanning documents.  Complaint, Para. 44; Plaintiff Dep. P. 132 L. 12 – 23.

21.     Initially, Plaintiff rode to work with her husband, Kolby Martin[2]. She rode in with him so that she could take her pain medications in the morning without worrying about driving. Plaintiff Dep. P. 125 L. 22 – P. 126 L. 10.

22.     After one or two weeks, Tonjes realized that there were complications with this arrangement.  Specifically, it was dangerous to allow an unarmed patrol officer on light duty to

---

[2] Plaintiff married Kolby Martin while on leave following her first surgery in July 2011.

ride with another patrol deputy. This was especially true where the patrol officer was married to the officer on light duty, and in a dangerous situation, may be worried about his spouse and neglect his duties. Additionally, Kolby Martin was assigned to the Bailey, Colorado, area, and would have had to use his shift time to drive Plaintiff to Fairplay and back to Bailey, when he should have been on duty then. Tonjes Dep. P. 73 L. 2- P. 79 L. 11; P. 111 L. 25 – P. 112 L. 24.

23.     Cindy Gharst offered to drive Plaintiff to work, but Plaintiff declined the offer. Gharst Dep., P. 76 L. 15 – P. 78 L. 10.

24.     No other patrol deputies on light duty have ever been permitted to ride to work with spouses who were patrol deputies on regular duty. Tonjes Dep., P. 104 L. 21 – P. 105 L. 5.

25.     On August 17, 2011, Plaintiff complained to Tonjes that she felt she and Kolby were being treated differently than other PCSO couples. Tonjes told Plaintiff to shut up, cursed at her, and slammed his fist on the table.  Plaintiff Dep. P. 127 L. 4 – P. 129 L. 23.

26.      Plaintiff alleges that after this incident, Tonjes forbade other employees from speaking with her. Complaint, Para. 51

27.     On September 14, 2011, Gharst wrote to Tonjes noting that Plaintiff would be re-evaluated for return to full duty in early October, and there was a concern about accommodating light duty indefinitely.  Gharst Dep. P.48 L. 23 – P. 51 L. 10; Deposition Exhibit 5, attached hereto as **Exhibit 12**.

28.     Gharst believed that Tonjes wanted to make sure that light duty work was being handled equally among employees, and that for business reasons, the Sheriff's office no longer had any light duty available. Gharst Dep. P.  54 L. 19 – P. 58 L. 14.

29.     On September 21, 2011, Plaintiff's doctor advised her that she would need another surgery.  Complaint, Para. 53.

30.     On September 22, 2011, Tonjes advised Plaintiff that as of September 26, 2011, light duty work would no longer be available.  Tonjes Dep. P. 85 L. 5-8; Deposition Exhibit 6, attached hereto as **Exhibit 13**.

31.     Plaintiff stopped coming to work after September 22, 2011.  Plaintiff Dep. P. 135 L. 18 – P. 136 L. 9.

32.     Plaintiff had her second surgery on October 18, 2011.  Complaint, Para. 57.  On October 13, 2011, Plaintiff's attorney wrote to Defendant advising that she could return to light duty work on November 29, 2011.  Gharst Dep. P. 58 L. 17-24; Deposition Exhibit 15, attached hereto as **Exhibit 14**.  By that time, Plaintiff had exhausted all of her sick leave, and would exhaust her FMLA on November 22, 2011, during the six week period.  However, the county granted her request and extended her an additional six days of FMLA leave.  Affidavit of Cindy Gharst (hereafter, "Gharst Aff."), Para. 4, **Exhibit 15**; Deposition Exhibit 17, **Exhibit 16**.

33.     On November 16, 2011, Wegener wrote to Plaintiff requesting that she return to light duty work on November 29, 2011. Wegener Aff., Para. 4; Deposition Exhibit 19, attached hereto as **Exhibit 17**.  Plaintiff appeared for work on November 29 and 30, 2011, and then stopped coming to work.  Gharst Aff., Para. 5.

34.     On December 5, 2011, Plaintiff's doctor advised that Plaintiff was still not able to work without restrictions, and released her to come back to work on January 17, 2012.  Wegener Aff., Para. 5, Ex. A to Affidavit; Plaintiff Dep. P. 136 L. 15 – 19.

35.     On December 6, 2011, Sheriff Wegener wrote to Plaintiff that although he had already extended leave beyond the FMLA limits, he approved the additional period of requested medical leave. Wegener Aff., Para. 6; Deposition Exhibit 22, attached as **Exhibit 18**.

36.      The PCSO light duty policy states: "light duty will be limited to three work weeks. On a one-time basis only, a one-week extension may be authorized by the Sheriff, not to exceed four weeks . . .light duty does not, in any way, create a right for the employee to occupy that or any other position on a permanent basis. Light duty positions may be deleted at anytime  . . . with or without cause." Gharst Aff., Para. 6; Ex. A to Gharst Aff.

37.     No other employees were on light duty during any period that Plaintiff sought light duty. Sarah Kimsey Deposition Transcript (hereafter, "Kimsey Dep."), P. 52 L. 15 – P. 53 L. 4, attached hereto as **Exhibit 19**.

38.     From August 1 through November 30, 2011, Plaintiff received a total of 274.5 hours of light duty work, more than any other PCSO employee with an off-duty injury since 2002 or earlier.  Gharst Aff., Para. 7.

### d.     Plaintiff's Resignation

39.     On January 3, 2013, Plaintiff filed her EEOC charge. Complaint, Para. 4.

40.     On January 6, 2013, Plaintiff's attorney wrote to the County, alleging that Plaintiff had been constructively discharged. Wegener Dep. P. 51 L. 17-24; Deposition Exhibit 20, attached hereto as **Exhibit 20**.

41.     Between September 22, 2011, and her resignation on January 6, 2012, Plaintiff worked only two days, and during that time, she did not make any complaints to the County,

and she did not receive any reprimands, write-ups, or any other disciplinary actions. Gharst Aff., Para. 5; Plaintiff Dep. P. 138 L. 7-20.

42. Plaintiff testified that Welles Tonjes and Sgt. Brown wanted her to file a lawsuit against the County, and retaliated against her for "the fact that I wouldn't file lawsuits" against the commissioner. Plaintiff Dep. P. 157 L. 20 – P. 163 L. 1; P. 166 L. 3 – P. 167 L. 17.

43. Plaintiff did not want to return to work in 2012 because she did not feel safe, she did not like the pay, and she wanted to complete her recovery. *Id*. at P. 178 L. 18 - P. 179 L. 9.

44. Throughout her tenure with PCSO, Plaintiff sought other employment. Plaintiff applied for positions with the Arapahoe County in 2010 and 2011, with Jefferson County in 2010, 2011, and 2012, with the city of Aurora in 2011 and 2012, with the city of Arvada in 2010 and 2011, and with Commerce City in summer 2011. *Id*., P. 79 L. 6 – P. 86 L. 14.

<u>**ARGUMENT**</u>

**I.    RETALIATION**

To state a claim a prima facie case of retaliation under Title VII, Plaintiff must prove: that: 1) she engaged in protected opposition to discrimination; 2) a reasonable person would have found her employer's subsequent action to be materially adverse; and 3) a causal connection exists between the protected activity and employer's actions. *McGowan v. City of Eufala*, 472 F.3d 736, 741 (10th Cir. 2006). This is a higher standard than a mere "adverse employment action." *Piercy v. Maketa*, 480 F.3d 1192, 1203, n. 12 (10th Cir. 2007).

Additionally, Plaintiff must prove that the unlawful retaliation "would not have occurred in the absence of the alleged wrongful action or actions of the employer." *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517, 2533 (U.S. 2013). Thus, Plaintiff must

demonstrate that her protected activity was the "but-for" reason for her termination. *Id.*

For purposes of this motion, Plaintiff has engaged in two protected activities: 1) the November 2009 complaint of Kelley Reynolds (reported by Kolby Martin, not Plaintiff), and 2) the May 2011 complaint regarding Commissioner John Tighe. SOF 6-14.  However, Plaintiff did not suffer any material adverse action and she cannot demonstrate a causal link between any protected activity and the alleged action.  Even if Plaintiff meets her prima facie case, she cannot demonstrate that Defendant's reasons for the alleged actions were pretext for discrimination.

A.  <u>Plaintiff Cannot Meet Her Prima Facie Case</u>

i.      <u>No material adverse action</u>

An employer's actions are "materially adverse" if they are "harmful to the point that they could dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 US 53, 57 (U.S. 2006).  The action must amount to "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities," or causing a significant change in benefits.  *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 761 (U.S. 1998).  Mere inconvenience or alterations of job responsibilities do not rise to the level of a material adverse employment action.  *Annett v. Univ. of Kansas*, 371 F.3d 1233, 1237-1238 (10th Cir. 2004).  Plaintiff has not alleged one single "material adverse action" sufficient to meet her prima facie case.

First, pursuant to C.R.S. 30-10-506, only Sheriff Wegener has the authority to hire, fire, or make significant changes to a deputy's employment status. *See* Wegener Aff, Ex. 2, Para. 3; *Tunget V. BOCC*, 992 P.2d 650 (Colo. App. 2000)("the sheriff, not the county or board, has the right of control with respect to deputies.")  Actions taken by Plaintiff's co-workers are irrelevant because such individuals had no authority to materially affect her employment.  Only Sheriff Wegener had such power, and Plaintiff has not alleged that Sheriff Wegener took any adverse actions or otherwise retaliated against her.  Therefore, her retaliation claim fails as a matter of law. *See Vance v. Ball State*, 133 S.Ct. 2434, 2443 (2013)(limiting "supervisor" in Title VII cases to one who has authority to "effect significant change in employment status," such as hiring, firing, failing to promote, or a decision causing a significant change in benefits.)

Second, any actions occurring before March 27, 2011, are time barred.  Plaintiff filed her EEOC charge on January 3, 2012. Therefore, Plaintiff cannot recover for any actions occurring before March 27, 2011, 300 days prior to the filing of her charge. *Daniels v. U.P.S.*, 701 F.3d 620, 628 (10th Cir. 2012) (to exhaust administrative remedies, plaintiff alleging claim under Title VII must file charge within 300 days of discriminatory act).  Second, Plaintiff has not timely alleged any discrete material adverse action.

Third, none of the actions occurring after March 27, 2011, constitute material adverse actions. Plaintiff appears to allege that the following actions are retaliatory: 1) Kelley Reynolds' failure to provide backup to her on May 20, 2011; b) not allowing her to ride to work with her husband while she was on light duty; c) Tonjes cursing at her and pounding a table following a meeting; d) Tonjes' telling employees not to speak to her while she was working in the office on

light duty; and e) discontinuing light duty work from September 26, 2011, through her October 18, 2011, surgery.  Even if proven, none of these actions constitute a <u>material</u> adverse action.

Courts have repeatedly held that a police officer's denial of backup is not sufficient to constitute a material adverse action. *See e.g. Duncan v. Manager, Dep't of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1314 (10th Cir. 2005) ("failure to receive backup, an angry outburst by a lieutenant during an IAB investigation, and her general ostracization by other officers . . .  may have made her work unpleasant, but they are insufficient to support a retaliation claim."); *see also Gonzalez v. Florida Dep't of Highway Safet*y, 237 F. Supp. 22d 1338, 1368 (S.D. Fla. 2002) and *Erkan v. Illinois Dep't. of Corrections*, 2006 WL 3087109 (N.D. Ill) (failure to provide backup to police officers in dangerous situations did not constitute material adverse actions).

Likewise, one angry outburst by a superior and isolation from co-workers do not constitute material adverse actions. *See Dugan, supra, Poorbaugh v. BOCC*, 2013 WL 5799910, *5 (D. Colo. 2013) (three alleged incidents of supervisor screaming at plaintiff insufficient to show interference with job performance); *Petersen v. Utah Dept. of Correction*s, 301 F.3d 1182, 1190 (10th Cir. 2002) ( ridicule by fellow workers and being "taken out of the  information loop" did not support retaliation claim); *Mickelson v. New York Life Ins. Co*., 460 F.3d 1304, 1318 (10th Cir. 2006) (unruly behavior during a meeting not sufficient to constitute retaliation, citing *Burlington Northern & Santa Fe Ry. Co. v. White,* 126 S.Ct. 2405, 2415 ("lack of good manners will not create such deterrence" necessary to constitute material adverse action capable of dissuading a reasonable employee from making a claim about discrimination)).

As to Plaintiff's allegations regarding denial of light duty, courts in the Tenth Circuit have consistently held that denial of light duty work is not a material adverse action. *See e.g.*

*Tinkle v. Oklahoma Gas & Electric*, 16 Fed. Appx. 815, 817 (10th Cir. 2001) (denial of light duty work not material adverse action where plaintiff failed to present evidence of specific light duty assignments; plaintiff's testimony that "some employees were given short-term light duty assignments for various medical reasons" not sufficient); *Fryer v. Coil Tubing Services*, LLC 415 Fed. Appx. 37, 46-46 (10th Cir. 20l1)(denial of light duty not material adverse action where policies did not provide light duty for non-work related injuries and no evidence of particular opening at time of plaintiff's request).

Moreover, in this case, Plaintiff was not "denied" light duty. Defendant ceased to offer her light duty <u>after</u> providing it for eight weeks, twice the maximum amount permitted by the PCSO policies. Plaintiff was "denied" light duty for only the three week period between September 26, 2011, and her October 18, 2011 surgery.

Additionally, Defendant's policy clearly states that employees have no "right" to light duty, and that a light duty position maybe deleted at any time. SOF 36. Even the denial of a monetary perk does not constitute an adverse employment action if it is "wholly within the employer's discretion to grant or deny." *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1029 (7th Cir. 2004); *Adams v. Entercom Kansas City, LLC*, 2009, WL 3561149, *10 (D. Kan. 2009)(denial of severance pay not a material adverse action where severance was "a privilege rather than a right"). Here, where providing light duty was entirely discretionary, Defendant's decision to end it after eight weeks was not a material adverse action.

Finally, Plaintiff's allegation that she was not permitted to ride in her husband's patrol car while on light duty is not a material adverse action. Although Plaintiff was initially permitted to ride with her deputy husband, she had no right to do so. As with light duty work

generally, Defendant had no obligation to provide Plaintiff with transportation to and from work, and there is no evidence that any other employees were given such a benefit.

In sum, Plaintiff cannot point to one material adverse action; therefore, her retaliation claim fails on this ground alone.

ii.     <u>No causal connection</u>

Even if Plaintiff could demonstrate that she sustained a material adverse action, which she cannot, she cannot demonstrate a causal connection between the action and any protected activity. Unless there is "very close temporal proximity" between the protected activity and the retaliatory action, plaintiff must offer additional evidence to establish a causal connection. *O'Neal v. Ferguson Constr. Co*., 237 F.3d 1248, 1253 (10th Cir. 2001). Plaintiff cannot show any connection between either protected activity and any adverse action.

Plaintiff has alleged two protected activities: her complaint about Kelley Reynolds in November 2009, and her complaint about Commissioner Tight in May 2011. As to the Reynolds complaint, Plaintiff cannot rely on temporal proximity where the alleged adverse actions occurred <u>eighteen months</u> after the protected activity.

While the complaint with Tighe is closer in time, several months elapsed between this complaint and any alleged adverse action. Thus, Plaintiff cannot rely on temporal proximity to meet her prima facie case of causation with respect to this complaint. *See Hysten v. Burlington N. & Santa Fe Ry. Co*., 296 F.3d 1177, 1184 10th Cir. 2002) (three month gap between protected activity and alleged retaliatory action too long to infer causation); *Connor v. Schnuck Markets, Inc.,* 121 F.3d 1390 (10th Cir. 1997) (four month period between protected activity and alleged retaliatory action, without more, insufficient to support inference of causation).

13

Plaintiff cannot demonstrate any evidence linking either of her complaints to any alleged adverse activity. First, Plaintiff cannot link her complaint regarding Kelley Reynolds to any adverse actions against her.  In fact, Reynolds was removed as her FTO.  Plaintiff speculates that Reynolds failed to back her up because "he never got over the fact that he was reprimanded" nearly two years before. Plaintiff Dep. P. 224 L. 19 – P. 225 L. 6.  This speculation fails to provide an adequate nexus. *Lunow v. City of Oklahoma*, 61 Fed. Appx. 598, 608 (10th Cir. 2003)( mere speculation that action was in retaliation for protected activity insufficient to show causation and defeat summary judgment.)  Plaintiff likewise cannot show any causal connection between the Reynolds complaint and her allegations that Tonjes Welles yelled at her and instructed others not to speak to her. Tonjes was not even employed as a deputy until nearly a year after Plaintiff made her complaint about Reynolds to Kolby Martin. Tonjes Dep. P. 8 L. 14-18.  There is no evidence that Tonjes was motivated in any way by the Reynolds complaint. Thus, Plaintiff also cannot show any link between the cessation of light duty and prohibiting Plaintiff from riding with her husband, both decisions made by Tonjes.

Second, Plaintiff cannot link any adverse action to the Tighe complaint. Plaintiff admits that Reynolds' failure to provide back up to her in May 2011 was not related to the John Tighe complaint.  Plaintiff Dep. P. 224 L. 13 – 17.  Plaintiff cannot link any action taken by Tonjes to the Tighe complaint. To the contrary, Plaintiff testified that Tonjes encouraged her to make a report about Tighe. SOF 13.  Indeed, at one point Plaintiff even testified that Tonjes wanted her to sue Commissioner Tighe, and that "a majority of incidents that occurred after I returned from having my back surgery" "was a significant form of retaliation" for "the fact that I wouldn't file

lawsuits." SOF 42.   Per Plaintiff's own testimony, Tonjes' actions were not in retaliation for any protected activity.

Of all the "retaliatory" actions alleged by Plaintiff, the cessation of light duty is in fact the weakest. The fact that Defendant gave Plaintiff eight weeks of light duty after her most recent complaint undermines any argument that retaliation was a motive in handling her light duty assignments.  Likewise, after Plaintiff's May 2011 complaint, Defendant initially granted Plaintiff the benefit of riding in with her husband. Defendant's change of position on this issue was work and safety related, not retaliatory.   Far from retaliating against her, Defendant went above and beyond any policy or requirement in attempting to accommodate Plaintiff's limitations after her surgeries.

Plaintiff simply cannot demonstrate any connection between either of her complaints and the alleged adverse actions. Therefore, she cannot meet her prima facie case of retaliation.

### B.  Plaintiff cannot Demonstrate Pretext

Even if Plaintiff could meet her prima facie case of retaliation, which she cannot, Defendant has articulated a legitimate, non-discriminatory reason for each action, and Plaintiff cannot demonstrate that the reasons are pretext for discrimination. *See e.g. Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005)(explaining burden shifting process in Title VII cases).

As set forth above, none of the actions alleged by Plaintiff constitute material adverse actions. The only incidents that could even remotely be deemed "actions" are the cessation of light duty and prohibiting Plaintiff from riding to work with her husband.

15

After providing Plaintiff with eight weeks of light duty work following her surgery, Defendant determined that light duty would no longer be available.  SOF 32 -35.   Plaintiff cannot demonstrate pretext because she cannot show that any similarly situated employees received light duty employment between September 26, 2011, and her second surgery, or that any specific work was available. *Freppon v. City of Chandler*, 528 Fed. Appx. 892, 902 (10th Cir. 2013)(plaintiff denied light duty work could not demonstrate pretext where he could not show that similarly situated employees received light duty; plaintiff's conclusory allegations about other officers' modified duties unpersuasive);  *Rice v. State of Kansas*, 2011 WL 2078752, *11 (D. Kan. 2011) (plaintiff failed to show causal connection between denial of light duty and protected activity).

To the contrary, Plaintiff received more light duty work than any other employee injured off the job, and more than Defendant's policy permitted. SOF 38. Moreover, after Plaintiff's second surgery, she was offered <u>additional</u> light duty, but showed up for only two days of work. SOF 41.   In addition to providing an unprecedented amount of light duty, Defendant also extended Plaintiff's FMLA leave.  Plaintiff's FMLA leave expired on November 22, 2011, but Defendant allowed her leave until January 17, 2012, nearly two months later. SOF 32-35.  In this respect, Plaintiff was treated better, not worse, than similarly situated employees.

Defendant ceased allowing Plaintiff to ride to work with Kolby Martin because he was a patrol deputy on duty, in another part of the county, and if a dangerous situation arose, Mr. Martin may have been forced to choose between his job and protecting his wife. SOF 22. Further, no patrol deputies on light duty had ever been permitted to ride in a patrol car with his or

her spouse while on duty. SOF 24.  Plaintiff cannot show that Defendant's stated reasons for its actions were pretext for discrimination.

In sum, Plaintiff cannot show that the alleged material adverse actions would not have occurred but for her protected activities.  Plaintiff's own testimony that she was retaliated against <u>because she would not file a lawsuit</u> against the Commissioner *per se* defeats the causal link needed to meet her prima facie case. There is no genuine issue of fact as to Plaintiff's retaliation claim, and summary judgment is proper.

## II.   CONSTRUCTIVE DISCHARGE

To prevail on a claim of constructive discharge, Plaintiff must show that her employer, through unlawful acts, made working conditions so intolerable that, <u>at the time of her resignation,</u> a reasonable person in the employee's shoes would feel forced to resign. *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004)[3].   The question is not whether working conditions at the facility were "difficult or unpleasant." *Id*. It is not enough that a plaintiff suffered "the ordinary slings and arrows that workers routinely encounter in a hard, cold world. *Id.*" The bar is "quite high," a plaintiff must demonstrate that she had "no other choice but to quit." *Yearous v. Niobrara Cnty. Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997).

When a plaintiff has resigned from her position, she must raise a genuine issue of material facts about whether she was constructively discharged to survive summary judgment. *Baca v. Sklar*, 398 F.3d 1210, 1217 (10th Cir. 2005).

---

[3]As set forth above, Plaintiff cannot show that she sustained a material adverse action sufficient to support her claim of retaliation. Therefore, her constructive discharge claim, which requires an even higher threshold showing, must also fail. *See e.g. Johnson v. Weld County*, 594 F.3d 1201, 1217 n. 6 (10th Cir. 2010).

The Tenth Circuit determines the voluntariness of a plaintiff's resignation under the totality of circumstances, including: 1) whether the plaintiff was given some alternative to resignation; 2) whether she understood the nature of the choice; 3) whether she was given a reasonable time in which to choose, and 4) whether she was permitted to choose the effective date of resignation. *See e.g. Narotzky v. Natrona Cnty Mem'l Hosp. Board of Trustees*, 610 F.3d 558, 563 (10th Cir. 2010).

When viewed in light of the four factors set forth in *Narotzky*, Plaintiff cannot raise a genuine issue of fact as whether she was constructively discharged.  As to the first factor, Plaintiff had alternatives other than resignation. At the time of her resignation, Plaintiff had not worked for over three months, and she had not worked in a regular duty capacity for over six months.  Despite Plaintiff's absence and her exhaustion of FMLA leave, Defendant was still communicating with Plaintiff regarding her anticipated return to the workplace, and even offered her additional light duty after her second surgery.  Plaintiff could have simply returned to work upon her doctor's release on January 17, 2012.  She chose to resign.

The second factor, plaintiff's understanding of the choice, also mitigates against a finding of constructive discharge.  The resignation came not from Plaintiff directly, but from her attorney. One can infer from Plaintiff's retaining of counsel to handle her resignation that she was well aware of and comfortable with her choice.

*Narotzky's* third factor is whether Plaintiff was given a reasonable time in which to choose to resign.  Plaintiff had been off work for several months and had ample time to make her decision. Moreover, Plaintiff was clearly contemplating a move well before her resignation, and essentially throughout her entire employment with Defendant.  Plaintiff became a full time

18

deputy in November 2009. In 2010 and 2011, Plaintiff applied for positions with Arapahoe County.  She applied for positions in Jefferson County in 2010, 2011, and 2012; with the City of Aurora in 2011 and 2012, and with the City of Arvada in 2010 and 2011. She also applied for a position with Commerce City in summer 2011. SOF 44.  Plaintiff's numerous attempts to find other employment demonstrate that she had ample time to make her decision. *See Luchaco v. Colorado State Patrol,* 2010 WL 3430850, *15 (D. Colo. 2010) (female officer not constructively discharged when she resigned voluntarily "without being asked or threatened," to take other position, and had applied for position well before alleged discriminatory acts).

Lastly, Plaintiff clearly chose her date of resignation. In fact, she did not bother to even advise Defendant of her resignation until three days <u>after</u> filing her EEOC charge alleging constructive discharge. SOF 39-40.

In light of these factors, there is no question that Plaintiff's discharge was voluntary. Plaintiff falls far short of demonstrating the kind of "intolerable" work environment that would objectively cause a reasonable person to feel forced to resign. *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004); *Poorbaugh v. BOCC*, 2013 WL 5799910  (10th Cir. 2013) (plaintiff's resignation after exhaustion of FMLA was voluntary; three "mildly severe" and "mildly embarrassing" outbursts by supervisor insufficient to sustain constructive discharge claim when she could have returned after medical leave); *Fryer v. Coil Tubing Services, LLC*, 415 Fed. Appx. 37, 46-47 (10th Cir. 2011) (denial of light duty work and loss of short term disability did not render plaintiff's work environment "intolerable.").

Moreover, Plaintiff must show that her working conditions were intolerable <u>at the time of her resignation</u>. *Exum, supra*, at 1135.  When she resigned, Plaintiff had been on leave for over

three months, during which she worked only two days and made no complaints about her employment. She was not written up or reprimanded, and had very little contact with Defendant. SOF 41. Any complaints Plaintiff may have had at other times in her employment were not an issue at the time she resigned; therefore she cannot show that her workplace was objectively intolerable. *See e.g. Gilchrist v. New Age Industrial Corp. Inc.,* 1997 WL 225904, *8 (D. Kan. 1997) (plaintiff could not show intolerable conditions when she resigned after requested transfer from allegedly discriminatory supervisor).

Plaintiff cannot raise a genuine fact as to whether she was constructively discharged and summary judgment is appropriate on this claim.

WHEREFORE, Defendant respectfully requests that the Court GRANT its motion for summary judgment.

Dated this 20th day of March, 2014.

Respectfully submitted,

*S/ Kristin Anderson George*
Cathy Havener Greer
Kristin Anderson George
Wells, Anderson & Race, LLC
1700 Broadway, Suite 1020
Denver, CO 80290
T: 303-820-1212
Email: cgreer@warllc.com; kageorge@warllc.com
**ATTORNEYS FOR THE DEFENDANT**

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on March 20, 2014, a true and correct copy of the above and foregoing **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

Ralph E. Lamar, Esq.
Email: ralphlamar@ymail.com

F. J. "Rick" Dindinger, II, Esq.
Email: frederick@dindingerlaw.com


*S/ Barbara McCall*
Barbara McCall
Email: bmccall@warllc.com

21