# Transcript of the Testimony of:
# Mike Brown

**Date:** January 8, 2014

Abby Martin v. Fred Wegener, in his official capacity as Sheriff of Park County, CO



Mile High Court Reporting and Video, Inc.
Phone: 303-202-0210
Fax: 303-205-0034
Email: contact@milehighreporting.com
milehighreporting.com

Exhibit 5 - Brown Dep

Deposition of: Mike Brown - January 8, 2014
Abby Martin v. Fred Wegener, in his official capacity as Sheriff of Park County, CO

Page 14

1  Q   Do you remember what step you took --
2  regardless of the source, what you did next?
3  A   Correct. I did a little bit of initial
4  investigation, and obviously I know that I had written
5  a complaint on Abby's behalf and sent it up the chain.
6      (Deposition Exhibit 8 was marked for
7  identification.)
8  Q   Mike, I'm showing you what's been marked as
9  Exhibit 8 to your deposition. Is this the Letter of
10 Complaint that you were referring to that you sent up
11 the chain?
12 A   Yes, it is.
13 Q   Did you review this before your deposition?
14 A   No.
15 Q   Do you have a rough feel for the last time
16 you actually saw this document?
17 A   When I filed it.
18 Q   In November of 2009?
19 A   About that time, yes.
20 Q   All right. As a result of -- well, let me
21 ask you this: Based upon what -- strike that.
22     Did you end up talking to Ms. Adam after you
23 learned that she was alleging that an inappropriate
24 comment had been made to find out exactly what she was
25 claiming had been said?

Page 15

1  A   I believe so. Without reviewing this, I
2  mean --
3  Q   And you're welcome to -- and for purposes of
4  our deposition, you're welcome to read this.
5      MS. GREER: Yeah, take your time.
6      THE DEPONENT: Okay.
7  Q   (By Mr. Lamar) I don't see a, what I would
8  call, formal statement from her in here.
9  A   Right. Right.
10 Q   But I'm just wondering whether you did talk
11 to her.
12     (The deponent perused the document.)
13 A   You want to ask me more questions on this
14 document?
15 Q   I'm sorry. I thought you were looking to
16 see --
17 A   Well, I am looking at this, and, you know, I
18 did talk to Abby prior, it looks like here in this
19 document.
20 Q   Does your report reflect that also you went
21 to Corporal Reynolds to talk to him about this
22 statement or alleged statement?
23 A   Yes.
24 Q   Did you end up also talking to another female
25 deputy, Cindy Hardey?

Page 16

1      MS. GREER: Objection to form. Go ahead.
2  I'm sorry. You can go ahead and answer.
3  Q   (By Mr. Lamar) I'm sorry. Did you speak with
4  Corporal Cindy Hardey?
5  A   I am not...
6  Q   Was she a corporal?
7  A   Hold on a second. Yes.
8  Q   Did you speak with her too?
9  A   I did.
10 Q   And as a result of your investigation, did
11 you find that Corporal Reynolds had violated any of the
12 Park County policies?
13 A   Yes, I did.
14 Q   On page 5 of your report it lists four
15 recommendations. Do you see those?
16 A   Yes, I do.
17 Q   Recommendation No. 1, "Kelley Reynolds has
18 been removed from the FTO program as a trainer per
19 Captain Hancock effectively immediately." That
20 actually states what was done.
21     Do you know whether Corporal Reynolds was
22 ever placed back in the FTO program?
23 A   I can't remember.
24 Q   The second item says, At a minimum a letter
25 of reprimand to be placed into his personnel file for

Page 17

1  at least one year. Do you know whether that
2  recommendation was adopted?
3  A   I do not know that.
4  Q   No. 3 said, "Suspension without pay as
5  authorized by Sheriff Wegener." Do you know whether
6  that recommendation was ever adopted?
7  A   I don't know.
8  Q   And the last one is, "Disciplinary Demotion
9  reduced one level of rank to Deputy." Do you know
10 whether that recommendation was adopted?
11 A   Corporal Reynolds' been demoted a couple of
12 times, and it's possible. I can't remember because of
13 this one here.
14 Q   You just don't know for certain what his
15 demotion was associated with?
16 A   It's back and forth for him. There's other
17 issues with Reynolds.
18 Q   Did Sheriff Wegener ever respond to you
19 either verbally or in writing in response to this
20 package, your recommendations?
21 A   No.
22 Q   Did Captain Hancock or the undersheriff ever
23 discuss with you what the sheriff was going to do in
24 response to your recommendations?
25     Well, I'm not sure he was Captain Hancock at

Exhibit 5 - Brown Dep

Deposition of: Mike Brown - January 8, 2014
Abby Martin v. Fred Wegener, in his official capacity as Sheriff of Park County, CO

Page 18
1  the time.
2  A   Yeah, I think it's how -- it is.
3  Q   It's addressed to Captain Hancock.
4  A   Yep.  I can't remember.  Once I sent this
5  document up, it's in the captain's hands.  I mean, it's
6  whatever I -- recommendation, it's up to the captain to
7  move forward with recommendations to the undersheriff
8  and sheriff.
9      I can't remember -- I mean, him being
10 disciplined, being removed from the FTO program, I
11 think that did happen.
12 Q   Who had the authority to remove him from the
13 FTO program immediately?
14 A   That would be Captain Hancock.
15 Q   Okay.  Did you have a conversation with
16 Captain Hancock about this investigation before you put
17 together your recommendations?
18 A   I did.
19 Q   Is that how you were able to say that
20 Corporal Reynolds had been removed from the FTO
21 program?
22 A   (The deponent nodded his head.)
23 Q   That's a yes?
24 A   It's possible.  I mean, you know, when you
25 kind of put the timelines together here.  I mean, this

Page 19
1  is dated the 25th, and I talked to Morgan, Paige, and
2  Reynolds on the 18th, so...
3  Q   Was this the only time, up until this date,
4  that you had investigated a charge of harassment or
5  discrimination within the department?
6  A   No.
7  Q   So there had been other occasions?
8  A   No.  It wasn't at this level of severity.  I
9  mean, it's more casual conversation, knock it off, no
10 documentation kind of a thing.
11 Q   Did that also involve issues about women in
12 the workplace, or was it a different kind of issue?
13 A   Different issues.
14 Q   Prior to conducting your investigation, had
15 you ever had any training on the county's
16 antiharassment or antidiscrimination policies?
17 A   Yes.
18 Q   And this is not addressed to Cindy Gharst.
19 Was she an employee of the county at this time, to the
20 best of your knowledge?
21 A   I believe so.
22 Q   Do you remember whether you sent her a copy,
23 even if it doesn't show it on the first page?
24 A   That, I can't remember.
25 Q   Do you have an understanding as to whether

Page 20
1  personnel issues had to be carbon'd to the county human
2  resources department?
3  A   A policy for that?
4  Q   Right.
5  A   Typically -- typically we do.  I don't see --
6  obviously I didn't cc this here, which would have gone
7  up to Captain Hancock for review.
8  Q   And it's possible he shared it with her
9  without your knowledge?
10 A   It's possible, yes.
11 Q   You said that Corporal Reynolds has been
12 demoted a couple of times.  Do you remember when his
13 first demotion occurred?
14 A   I think this may have been the first one.
15 Q   Based upon your statement then, at some point
16 in time he was then promoted back to corporal from
17 deputy?
18 A   That's correct.
19 Q   And if he was demoted again, do you know what
20 the second demotion was over?
21 A   An affair with one of the coworkers.
22 Q   Was that Cindy Hardey?
23 A   Yes.
24 Q   Was she an animal control officer?
25 A   Yes.

Page 21
1  Q   Do you know approximately when that second
2  demotion occurred?
3  A   2011.  Close to that time.  Might have been
4  2010.  I don't know the exact date.
5  Q   And then was he subsequently promoted back
6  again to corporal after that demotion?
7  A   I do not believe so.
8  Q   So it's your understanding that he's a deputy
9  now?
10 A   No.  He's resigned.
11 Q   He's no longer with the force?
12 A   He's no longer with the agency.
13 Q   Do you remember approximately when he
14 resigned?
15 A   2011.  2012.
16 Q   Do you remember whether it was shortly after
17 the second demotion, or was he a deputy for quite a
18 while after --
19 A   No.  It was shortly after the second one, I
20 believe.
21 Q   As a follow-up to the complaint that you
22 presented to Captain Hancock and the recommendations
23 for discipline, do you know whether anyone ever told
24 Corporal Reynolds that he was not to engage in any acts
25 of retaliation against Deputy Adam?

Exhibit 5 - Brown Dep
Deposition of: Mike Brown - January 8, 2014
Abby Martin v. Fred Wegener, in his official capacity as Sheriff of Park County, CO

**Page 46**

1 had she already signed up to take it at some point
2 later in the year?
3    A   For the training?
4    Q   For the SRO, right.
5    A   I don't know if she was. Typically with a
6 new SRO, they would go to training in the summer.
7    Q   How far in advance do people sign up for
8 training?
9    A   A month. Sometimes weeks. It depends on
10 where the training is, where it's held. We've sent
11 SROs to Las Vegas for training, we've sent them to
12 Florida for training, and we also did training here
13 around the Denver area.
14    Q   So it just depends upon when and where it's
15 being offered?
16    A   Correct.
17    Q   And what's in the budget?
18    A   Not so much the budget. That's typically
19 irrelevant.
20    Q   Was she required to wear the full uniform,
21 including the duty belt, when she was an SRO?
22    A   Yes.
23    Q   Is that a standard expectation for anyone
24 who's an SRO?
25    A   Yes.

**Page 47**

1    Q   Did she ever make a request to you or anyone
2 else, to your knowledge, not to have to wear the full
3 belt while she was an SRO?
4    A   No.
5    Q   Have any other deputies been allowed to wear
6 a modified uniform on Fridays when they were an SRO?
7    A   Not to my knowledge.
8    Q   How did you learn that she had been asked to
9 perform, what I will use in quotation marks, as the
10 Barbie Dance by John Tighe?
11    A   I believe Abby came and talked to either
12 Corporal Tonjes or myself or both.
13    Q   Was that while you were in the office, or
14 were you out --
15    A   Been in the office.
16    Q   So you don't remember all three of you
17 meeting at the same time?
18    A   That, I can't remember.
19    Q   Do you remember whether she came to see you
20 on the day that it occurred?
21    A   It's possible. That, or a day after. I'm
22 not sure. I remember Abby being pretty upset,
23 understandably.
24    Q   What was Commissioner Tighe doing at the
25 school on that career day? Do you know?

**Page 48**

1    A   He doesn't answer to me. I have no idea.
2    Q   Was he there in his capacity, to your
3 knowledge, as either a commissioner or a reserve deputy
4 or neither?
5    A   I believe he was as a commissioner that day.
6    Q   Did you do the investigation into the
7 allegations that Abby made about Commissioner Tighe?
8    A   I believe Corporal Tonjes did.
9    Q   Did Corporal Tonjes ask you for any
10 directions --
11    A   Yes.
12    Q   -- when you conducted that investigation?
13    A   Yeah.
14    Q   I'm going to show you Exhibit 3. Here it is.
15 It's a complaint form that was addressed to Monte Gore
16 by Abby Adam on May 10, 2011. Did you help her in
17 preparing this?
18    A   Help her in what capacity?
19    Q   In any capacity. Do you remember --
20    A   I remember talking with Abby.
21    Q   Did you indicate to her how you felt in terms
22 of the propriety or lack thereof of Mr. Tighe's request
23 that she do the Barbie Cheer that day?
24    A   Yes.
25    Q   What did you tell her?

**Page 49**

1    A   I thought it was inappropriate; and based on
2 my training and as a D.A.R.E. officer myself, that
3 would be something that I wouldn't ask anyone to do.
4    Q   As a D.A.R.E. officer, was -- did you have
5 D.A.R.E. training when you were in Minnesota?
6    A   No.
7    Q   That only came when you came to Colorado?
8    A   Correct.
9    Q   Did you ever learn that there were any types
10 of dances that should be demonstrated to the students
11 as part of the D.A.R.E. program?
12    A   We do; not so much dances but more cheers.
13 Different fun things with the kids, and target audience
14 is fifth and sixth graders, so 10- to 12-year-old kids.
15    Q   Do you know whether Commissioner Tighe, John
16 Tighe, had ever received any training in sexual
17 harassment while he was a reserve deputy for the PCSO?
18    A   It was provided. I don't know if he
19 attended. He would have probably been to our CTSI
20 training, which was a mandatory training for sexual
21 harassment -- harassment, including sexual harassment
22 and those types of issues, based on county policy and
23 the PCSO. There's two policies for employees of Park
24 County.
25        We run under the sheriff's office policy, but

Exhibit 5 - Brown Dep

Deposition of: Mike Brown - January 8, 2014
Abby Martin v. Fred Wegener, in his official capacity as Sheriff of Park County, CO

Page 90

```
 1   County Sheriff's Office?
 2       A   No.
 3       Q   Did you work with Cindy Gharst to make sure
 4   that any doctor's restrictions for Abby Martin were
 5   followed?
 6       A   Yes.
 7       Q   Did you try to comply with the ADA and Family
 8   Medical Leave obligations?
 9       A   Yes.
10           MS. GREER:  I don't have any other questions.
11                   EXAMINATION
12   BY MR. LAMAR:
13       Q   Did Sergeant Tonjes have the ability to
14   decide whether Kolby Martin could transport Abby Martin
15   without going to you?
16       A   He could have, yes.
17           MR. LAMAR:  No further questions.
18           (The deposition concluded at 3:20 p.m.)
19
20
21
22
23
24
25
```

Page 92

```
 1                   CERTIFICATE
 2       I, Melissa Emily Huston, a Registered
 3   Professional Reporter, Notary Public of the State of
 4   Colorado, certify that before the deposition the
 5   witness was sworn by me to testify to the truth, and
 6   that the foregoing is a true transcript of the
 7   questions asked, testimony given, and proceedings had.
 8
 9       I further certify that I am not related to
10   any party herein, nor their counsel, and have no
11   interest in the result of this litigation.
12
13       IN WITNESS WHEREOF, I have hereunto set my
14   hand and seal this _____ day of _____, 2014.
15
16
17           _____
             Melissa Emily Huston, RPR
18           My Commission expires 4/14/2015
             Notary ID:  19994009481
19
20
21
22
23
24
25
```

Page 91

```
 1              AFFIDAVIT
 2       I, MIKE BROWN, have read my deposition and it
 3   is true and accurate, except for any changes or
 4   corrections now indicated by me on the Amendment sheet.
 5           Amendment sheet attached   ( )
 6           No changes to testimony    ( )
 7
             _____
 8           MIKE BROWN
 9
10           SUBSCRIBED AND SWORN to before me this
11   date _____.
12
             My commission expires _____.
13
14           _____
             NOTARY PUBLIC
15
16           _____
             STREET ADDRESS
17
18           _____
             CITY, STATE, ZIP
19
20   Return to:  MILE HIGH COURT REPORTING & VIDEO, INC.
             14143 Denver West Parkway, Suite 100A
21           Golden, Colorado  80401
22
23
24
25
```

January 22, 2014

CATHY HAVENER GREER, ESQ.
Wells, Anderson & Race, LLC
1700 Broadway, Suite 1020
Denver, CO 80290

Re:  Abby Martin v. Fred Wegener
     Deposition of MIKE BROWN
     January 8, 2014

Dear Ms. Greer,
Enclosed with your copy of the above-referenced deposition is the signature page from the Court's original transcript.
In accordance with the Rule, please have the witness read and sign his or her testimony, then return the executed signature page and any amendment sheets used to us within 35 days of the date of this letter.

Sincerely,

MILE HIGH COURT REPORTING & VIDEO, INC.
Encl.
cc:  Original transcript
     Ralph E. Lamar, IV, Esq.

Exhibit 5 - Brown Dep

Deposition of:  Mike Brown - January 8, 2014
Abby Martin v. Fred Wegener, in his official capacity as Sheriff of Park County, CO

RALPH E. LAMAR, IV, ESQ.
Law Office of Ralph Lamar
8515 Braun Loop
Arvada, Colorado 80005

Re:  Abby Martin v. Fred Wegener
Case No.:  1:13-cv-00884-PAB-KMT
Deposition of MIKE BROWN
Taken January 8, 2014

Dear Mr. Lamar:
The above-referenced original deposition is being filed
with you this date: _____.

Pursuant to the governing Rules of Civil Procedure, the
above-mentioned deposition is being filed:
_____ signed, with no changes
_____ signed, with changes, a copy of which is attached
_____ unsigned, no changes
_____ unsigned, with changes, a copy of which is
      attached

_____ unsigned, pursuant to agreement of counsel that
      the deposition may be reviewed and signed at or
      before the time of trial

_____ unsigned, our office having received notice that
      the case has settled
_____ signature waived at the time of deposition
_____ signature not required

MILE HIGH COURT REPORTING & VIDEO, INC.

cc:  Original transcript
     Cathy Havener Greer, Esq.

25 (Page 94)