IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00884-PAB-KMT

ABBY MARTIN,

Plaintiff,

v.

FRED WEGENER, IN HIS OFFICIAL CAPACITY AS SHERIFF OF PARK COUNTY, CO

Defendant.

---

## DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---

Defendant Fred Wegener, by and through counsel, Wells, Anderson & Race, LLC hereby submits his Reply in Support of Motion for Summary Judgment as follows:

Plaintiff's Response fails to establish a genuine issue of material fact as to her claims of retaliation and constructive discharge. Summary judgment is proper on both claims.

## REPLY TO PLAINTIFF'S RESPONSE TO STATEMENT OF UNDISPUTED FACTS[1]

SOF 9.   Plaintiff's assertion that "Reynolds was not counseled that retaliation was unlawful  . . . ." does not dispute this SOF, and the testimony cited by Plaintiff does not support this additional  SOF. Brown testified that since he was not the one to speak to Reynolds, he "did not remember formally" whether he personally counseled Reynolds against retaliation. P's Ex.

---

[1]  Defendant reserves the right to dispute any facts asserted herein at trial. Defendant addresses only the facts that Plaintiff did not unequivocally admit.

A, Brown Dep[2]., P. 21 L. 21 – P. 22 L 24.   Plaintiff's response to Def's SOF 9 should be disregarded.

SOF 10.   Plaintiff's assertion does not dispute that Reynolds was demoted from the position of her FTO, which she admits. Defendant admits Plaintiff's other SOFs.

SOF 14. Plaintiff's assertions, which Defendant admits, do not dispute this SOF.

SOF 16.  Plaintiff's assertion does not dispute this SOF.

SOF 17. Plaintiff's assertions do not dispute this SOF, and she mischaracterizes Brown's testimony. He testified that regular patrol deputies have a duty to act in the commission of a felony if one is observed, but not a misdemeanor, "even if you're just only being paid by the agency when you're on duty." Brown Dep., P's Ex. A., P. 68 L. 13 – P. 69 L. 1.   Since Tighe was an unpaid reserve duty and not observing a felony, this testimony was not directed towards him. Rather, Brown was explaining why the PSCO did not want Plaintiff riding in with her husband while she was on restricted duty.

SOF 22.  Plaintiff's statement that Tonjes and Brown "re-evaluated" the situation does not dispute this SOF. Plaintiff's statement that Tonjes' explanation "lacks credibility" is insufficient to dispute this fact and also irrelevant. Defendant admits Plaintiff's additional SOFs.

SOF 23.  Plaintiff's additional assertion, though admitted, does not dispute this SOF.

SOF 24.  Defendant admits that Tonjes testified that he was not aware of any other patrol deputies on light duty that had been permitted to ride to work with spouses who were patrol deputies on light duty.  Plaintiff's assertion that two other deputies were given rides to work by other deputies who were not their spouses does not dispute this SOF.  Plaintiff's statement

---

[2] Other than the additional deposition testimony attached as Exhibits 21 to 23 of this reply, deposition testimony cited herein has already been provided to the court and will not be re-submitted.

regarding Kolby Martin's belief as to the basis for Brown's decision is speculation and should not be considered. *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1225 (10th Cir. 2007) ("mere conjecture" insufficient to defeat summary judgment).

28.     Defendant admits that Gharst did not have a specific recollection of why the light duty was stopped and that it was initially available after Plaintiff's first surgery. Brown actually testified that every attempt is made to keep them on light duty "if we have a light duty job for them." Brown Dep., P's Ex. A, P. 78 L. 16-20.

38.     This SOF is deemed admitted in full. Plaintiff cites no evidence to contradict that she received more light duty than any other PSCO employee with an off-duty injury since 2002.

42.     Plaintiff's additional assertions, which are admitted, do not dispute this SOF.

43.     Plaintiff's additional assertions do not dispute this SOF. Defendant admits that Plaintiff also testified that she did not want to return to work because she was having trouble sleeping.  Plaintiff's statements in her Declaration should not be considered.  First, the statement that Brown told Kolby Martin that they were hiring for her position at the end of November 2011 is inadmissible hearsay. *Johnson v. Weld County*, 594 F.3d 1202, 1209 (10th Cir. 2010).  Second, when Plaintiff resigned in January 2012, she knew that they had not hired for her position, so this could not have been a reason for her desire to not return to work. Third, in her deposition, Plaintiff was given a chance to state every reason for her decision not to return to work. Plaintiff's Dep., P's Ex. B, P. 178 L. 18 – P. 179 L. 9. Paragraphs 6-7 of her Declaration contradict this testimony and therefore the Declaration constitutes a sham affidavits that should not be considered on summary judgment. *Juarez v. Utah*, 263 Fed. Appx. 726, 735 (10th Cir. 2008)(affidavit contradicting deposition testimony properly excluded).

## **RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS**

All facts regarding conduct occurring before March 9, 2011, including Plaintiff's SOFs **1, 3, 6-20, and 31-33** should be disregarded because claims arising from this conduct are time barred. *See Daniels v. UPS*, 701 F.3d 620, 628 (10th Cir. 2012) However, in the event the court considers them, Defendant responds as follows to Plaintiff's Statement of Facts:

1-2.    Admitted.

3.    The policy language is admitted.  Denied that the policy was violated and that "many individuals" knew of her complaint. These assertions are unsupported and should be disregarded.

4.-7.    Admitted.

8.    Admitted that Plaintiff complained to Brown "about Paige's phone and radio communications."  The testimony cited by Plaintiff does not support the other assertions.[3] Plaintiff Dep. P. 146 L. 7-8, states verbatim "complaint, and then the hostility when I was on my own from Corporal Paige as he was my supervisor."  Plaintiff Dep. P. 144 L. 1-5 states that when Paige put a mark on her FTO Scores, he would say, "just keep in mind this isn't relevant to your complaint you made against Kelley." *Id*. (emphasis added).  Plaintiff Dep. P. 66 L. 18 states, "it was fair that Corporal Paige was being so hostile, and that." None of this testimony supports the conclusory allegation that Paige "retailed against her" by reminding her about it every week and "taking every opportunity to humiliate and harass her."  *McKenzie v. Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005) (conclusory allegations insufficient to create issue of fact on summary judgment).

---

[3] Plaintiff's brief is rife with misrepresented or incorrect record cites. In the interest of simplicity Defendant has pointed out only those that may be material.

9.    Admitted that on this one occasion Paige called Plaintiff at home.  Denied as to the implication that this occurred more than once, as there is no support for that assertion.

10.    This SOF is speculative and should be disregarded. *Id*.

11.    Admitted that Plaintiff had gastrointestinal problems requiring medical treatment. Plaintiff's statement regarding "several months of constant harassment from Paige" is a conclusory allegation with no evidentiary support. *Id*.

12.    Admitted that Plaintiff complained about Paige to Deputy DeBerry and that he told Plaintiff that he reported it through his chain of command. There is no evidence that DeBerry did in fact report her complaint, so this statement should be disregarded.

13.    This SOF is entirely unsupported and should be disregarded. First, Plaintiff's reference to Page 145 of her deposition, without any line reference, does not comply with the Court's rules regarding record citations. Second, even if considered, Page 145 of Plaintiff's deposition discusses only her complaint regarding Paige's "phone and radio communications." There is no reference to complaints of harassment, retaliation, or denial of a shift bid. Likewise, Page 87, L. 1-3 of her deposition states, verbatim, "had made. If I complained, I wouldn't make my probationary period, and then I wouldn't be employed by Park County.  So at that point I had basically." There is no context to this statement, and no indication that Brown made it or that it concerned Plaintiff's alleged complaint regarding Paige.

14.    This SOF should be stricken because Plaintiff failed to properly cite to the record. However, if considered, admitted that Plaintiff was denied a shift for which she bid and that she was told it was due to her lack of seniority.   Ken Baker received the shift Plaintiff wanted, although he had also requested a different shift.  Plaintiff Dep., P's Ex. B, P. 115 L. 1 – P. 119 L.

3.  Plaintiff admitted that Baker had  a "long-standing" relationship with the department because he had worked in the jail, and she did not know if the jail service counted toward his seniority. *Id*. Admitted that Plaintiff asked to move to days because she felt uncomfortable with Paige <u>and</u> "since I didn't know the geography as well in Fairplay." *Id*. at P. 146 L. 9-13. Shift assignments lasted approximately six months.  After that six month period, Plaintiff was given the shift she requested. *Id*. at P. 119 L. 6 – 14.  Denied that any policy or procedure was violated as there is no support for this assertion.

15.      Denied.  This SOF should be disregarded because the testimony cited by Plaintiff has nothing to do with denial of overtime shifts.

16.      Admitted  that  in  early  2010,  Plaintiff  requested  rifle  certification  to  Sergeant Brown  and  that  she  never  got  certified.   Admitted  that  Flint  noticed  that  Plaintiff  had  only  a handgun and assisted with her long-gun certification.  The rest of this SOF is denied because it is not supported by the record citations, which do not comply with the rules.

17.      Admitted  that  Hardey  was  Plaintiff's  supervisor  after  Paige.   The  remaining allegations  are  denied  because  they  are  not  supported  by  the  testimony  Plaintiff  cites,  which states  only  that  when  Hardey  worked  the  night  shift,  he  called  the  shots  on  the  day  shift, communicating with her through another officer <u>or through text messages</u>. *Id*. at P. 121 L. 3-21.

18.      Admitted that in December 2010, Hardey wrote Plaintiff up for two (not three) incidents.  *Id*. at P. 120 L. 14-17. Admitted that Hancock disagreed with the write-ups and removed them from Plaintiff's file.  The statement that Hardey was trying to get Plaintiff fired is speculation and should be disregarded. The statement from Reynolds to Yoshi Goto is inadmissible hearsay.  There is no evidence in the record that Plaintiff told Hancock that Hardey

was "harassing" her or "creating a hostile work environment."

19.     Denied.   Hancock's assumption that Hardey knew of Plaintiff's complaint regarding Reynolds is speculation.

20.     Plaintiff misrepresents this testimony.  Admitted that in December 2010, Plaintiff told Hancock she "was thinking of" consulting with an FOP attorney. *Id*. at P. 44 L. 4-9. Admitted that Hancock told her that talking to an attorney would be detrimental to her career in law enforcement, as he believed at the time.  Hancock Dep., Plaintiff's Ex. C, P. 35 L. 4 – 21. The remaining allegations are denied and are not supported by the testimony cited.

21.     The statement that "deputies are always on duty" is misconstrued. See reply to Def's SOF 17, Page 2.  Otherwise, admitted.

22.– 28. Admitted

29.     Plaintiff has not attached all of the cited testimony and what is attached does not support this SOF. Denied.

30.     Admitted.

31.     The cited testimony does not support the conclusory allegation that "Reynolds, Hardey, and other PSCO officers failed to communication or/or  provide backup." Other than the October 27, 2010, incident, Plaintiff offers no evidence of this alleged failure. Otherwise, this SOF is admitted.

32.     The testimony does not support the allegation that Reynolds "falsely advised dispatch that he was en route from the Sheriff's office." Plaintiff actually testified that Reynolds "aired that he would take care of it and be my backup." Plaintiff Dep. P. 152 L. 16-17. Otherwise, admitted.

33.     Admitted that Reynolds was never disciplined. Otherwise, denied. Plaintiff's actual testimony was that "Welles had gotten the report from other individuals" that Reynolds was surfing the net.  *Id*. at P. 153 L. 12 – 23.  Statements from "other individuals" to Welles constitute hearsay.

34.     Admitted.

35.     Admitted that Reynolds did not show up to be Plaintiff's backup at the high school. Denied that his absence was in retaliation for the complaint Plaintiff filed eighteen months before; this is unsupported speculation.

36.     Admitted that Plaintiff told Tonjes about Reynolds' failure to show up at the high school. The cited testimony does not support the allegation that Plaintiff reported this conduct as "retaliatory," or that she told Tonjes about the complaint she made in November 2009, prior to Tonjes' employment with the PSCO.

37.     Admitted.

38.     Denied. Reynolds' alleged statement to Goto is inadmissible hearsay.

39.     Admitted.

40.     Admitted that Plaintiff complained to Brown about her uniform and that her request was denied.

41.     Admitted. However, even the modified uniform required deputies to wear a duty belt with a gun, magazines, handcuffs, two radios in hand, or something on the belt. Hancock Dep. P. 46 L. 16 – P. 47 L. 22. Admitted that Hancock would have approved a "dress-down Friday." *Id*. at P. 48 L. 2-6.

42.     Defendant admits the actual testimony cited by Plaintiff, which is that Welles told

her, "if I was going to have back surgery, I should plan on getting my walking papers." Plaintiff Dep. P. 162 L. 22 – P. 163 L. 2.  Defendant denies the statement that Tonjes said, "command staff is not going to put up with you having surgery" because that statement is not in the record.

43.     Defendant admits that Tonjes told Plaintiff that her husband could not set foot in the sheriff's office while she was working.  Defendant denies the remaining allegations because they are not supported by the cited testimony.

44.     Defendant admits that Plaintiff complained to Tonjes and that he, Plaintiff, and Brown met in the kitchen. Defendant denies the remaining allegations because they are not supported by the cited testimony.

45.     Defendant admits that Tonjes told her to shut up, said "this is bullshit,"and slammed his fist on the table. Defendant admits that Plaintiff was frightened. Defendant denies the remaining allegations because they are not supported by the cited testimony.

46.     Defendant admits that either Brown or Tonjes mentioned the possibility of Plaintiff working graveyard shift. Defendant denies the remaining allegations because they are not supported by the cited testimony.

47.– 50. Admitted.

51.     Denied that Tonjes claims Sarah Kimsey said something about the work not getting done. Tonjes' actual testimony is that he could observe her not getting the work done, and he "believed" Kimsey said something about it. Tonjes Dep. P. 101 L. 5-14. Otherwise, admitted.

52.     Plaintiff's assertion in her declaration that Tonjes "forbade everyone" from

talking to her, followed by the assertion that "no one ever told Kimsey not to talk to her" is inherently inconsistent.  However, admitted.

53.     Admitted.

54.     As Plaintiff's Exhibit P indicates, it was her doctor, not Plaintiff, who informed Tonjes of the surgery. Otherwise, admitted.

55.     Admitted that on September 22, 2011 (not September 22) Tonjes advised Plaintiff that PSCO would not be able to provide her any light duty as of September 26, 2011. See P's Ex. Q.  Plaintiff's assertion that Tonjes' statement was "false" is unsupported and therefore denied.

56.     Admitted that Plaintiff had used her vacation and sick leave as of August 17, 2011.  The remaining assertions constitute unsupported speculation and are denied.

57.     Admitted that Kolby Martin made this statement to Plaintiff. However, Brown's original statement to Kolby is inadmissible hearsay and should be disregarded.

58.     Defendant denies the statement that PSCO was hiring for her position, at it is speculation and not supported by any cite to the record.  Otherwise, admitted.

59.     Plaintiff's statement that she believed a doctor's note was unnecessary to sit for the test is speculation. Otherwise, admitted.

60. – 61. Admitted.

62.     Admitted that on December 6, 2011, Wegener told Plaintiff that he would not approve additional donated leave time, that there was no written policy regarding donated time, and that he did not recall previously refusing to allow an employee to use donated time. Wegener allows donated sick time "until it becomes a hardship on the department." Wegener

Dep. P. 47 L. 5-8.  The remaining assertions are arguments which should be disregarded.

63.   Admitted.   Wegener believed the job posting was to fill the spot of Kelley Reynolds, who was going into the military.  *Id*. at P. 44 L. 22 – P. 45 L. 14. It takes a few months to get a pool of qualified applicants once a job is posted. *Id*. Gharst said Kimsey told her to post it because Reynolds going into the military; it had nothing to do with Plaintiff being on light duty. See Gharst Dep., attached herein as **Ex. 21**, P. 69 L. 25 – P.70 L. 20; Kimsey Dep, attached herein as **Ex. 22**, P. 28 L. 1 - P. 29 L. 22.

64.   Admitted.

65.   Admitted that Hancock did not <u>recall</u> seeing the charge.

66.   Admitted that sometime in <u>summer 2013</u>, a year and a half after Plaintiff resigned, Hancock made the statement to Goto and it insulted Plaintiff.  Plaintiff Dep., attached hereto as **Ex. 23**, P. 112 L L. 9 – P. 113 L. 6; P. 7 L. 14-15.

## ARGUMENT

### I.    RETALIATION

Plaintiff expressly concedes that until her resignation, she did not suffer any discrete employment action. Plaintiff's Response, P. 21-22. Rather, the essence of Plaintiff's retaliation complaint is that everything that happened to her after her fall 2009 complaint about Kelley Reynolds was in retaliation for her complaint about his comments and attitude toward women

To prevail under a theory of hostile environment retaliation, Plaintiff  must show that the work environment was so hostile that a reasonable employee would consider it a material adverse action, such that it would discourage her from making a complaint. *Burlington Northern v. White*, 548 U.S. 53, 67-68 (2006).  To meet this burden, Plaintiff first must demonstrate that

the acts alleged are part of the same hostile work environment. *See Duncan v. Manager Dep't of Safety, City & County of Denver*, 397 F.3d 1300, 1309 (10th Cir. 2005). Then, Plaintiff must demonstrate that the harassment was so pervasive and severe that it constituted a hostile environment. *Fullwiley v. Union Pacific Corp.*, 273 Fed. Appx. 710 (10th Cir. 2008).

If Plaintiff meets these burdens, she must demonstrate that Defendant bears liability, by demonstrating that it knew or should have known of the conduct and failed to respond adequately. In determining whether the response was adequate, courts consider "whether the remedial and preventative action is reasonably calculated to end the harassment." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 678 (10th Cir. 1998).

Plaintiff's claim fails for several reasons, as set forth below.

### A. Plaintiff Cannot Meet Her Prima Facie Case

Plaintiff cannot meet her prima facie case because the conduct alleged is not sufficiently pervasive or severe to constitute a materially adverse action, and because she cannot establish a causal connection between any act and any protected activity.

### i. No material adverse action

Plaintiff cannot demonstrate that the alleged harassment constituted a material, adverse action sufficient to deter her from filing a complaint of discrimination because a) the continuing violation theory does not apply; and b) the acts alleged are not severe or pervasive enough to constitute a hostile environment.

### a. Continuing Violation Theory does not Apply

The court should not consider acts occurring before March 9, 2011, because the continuing violation does not apply to "discrete acts such as termination, failure to promote,

denial of transfer," or other acts that are "easy to identify." *National Railroad Passenger Corp. v. Morgan*, 536 US 101 (2002), at 110-113. Although Plaintiff attempts to circumvent *Morgan* by arguing that the pre-recovery conduct is part of a hostile work environment, each pre-March 9, 2011, act alleged by Plaintiff is in fact a "discrete act" as follows:

- ●11/18/2009, co-worker Morgan called her a "traitor" for the Reynolds complaint.

- ● 11/18/2009, Hancock failed to formally discipline Reynolds.

- ● 7/9/2010, Paige called her at home to tell her she was in big trouble.

- ● June 2010, Hardey did not grant her a shift for which she bid.

- ● February 2010, Brown denied her long gun training (which she later received).

- ● December 2010, Hardey submitted two write-ups (later removed by Hancock).

- ● 10/27/2010, Reynolds failed to provide backup (although Tonjes arrived).

- ● December 2010, Hancock advised her against seeking counsel.

Each of these actions is a discrete act "whose accrual date can be easily determined, and thus, cannot give rise to a 'continuing violation' theory." *Felix v. City and County of Denver*, 2011 WL 1085766 (D. Colo. 2001)(claims of negative evaluations, reprimands, and refusals of request to transfer are discrete actions to which continuing violation theory does not apply); *Daniels v. UPS*, 701 F.3d 620, 633 (10th Cir. 2012) (denial of training discrete act).

Moreover, the actions dating outside the statutory period are not part of the alleged "same actionable hostile work environment practice," as required to establish a continuing violation. *Morgan*, *supra*, at 722. To determine whether the earlier acts are part of the same practice, courts consider the type, frequency, and timing of the acts, as well as the perpetrator of the acts. *Duncan, supra,* at 1309.

These actions are not in any way related. They are isolated events, with no relation to one another, by different co-workers, over a period of nearly a year. They are also unrelated to her timely allegations that she was not permitted to wear a modified uniform, denied additional light duty, not allowed to ride with her husband to work, denied additional donated time, and berated by Tonjes. *See e.g. Semsroth v. City of Wichita*, 304 Fed. Appx. 707, 727 (10th Cir. 2008)(disregarding officer's allegations she was harassed by a co-worker during a traffic stop, received disciplinary treatment for writing insufficient tickets, and received disparate treatment for insufficient meeting attendance as outside 300 day window and unrelated to complaints regarding derogatory treatment by one supervisor regarding her pregnancy).

Lastly, a continuing violation claim fails when the plaintiff knew or should have known that that she was being discriminated against at the time the acts occurred. *Coit v. Zavaras*, 2013 WL 3448340, *6 (D. Colo. 2013). This theory is based on the "equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware" that her rights were being violated. *Id*. Here, Plaintiff's initial complaint of Reynolds demonstrates that Plaintiff was aware of her rights, a point further underscored by her reference to seeking counsel in December 2010.

In short, Plaintiff's characterization of these actions as part of a hostile environment claim is a blatant attempt to bootstrap them into her timely claims and to circumvent *Morgan*.

### b. The Conduct was not Sufficiently Severe or Pervasive.

As set forth above, only acts occurring after March 9, 2011, should be considered in evaluating Plaintiff's retaliatory hostile environment claim. In order to prevail on this claim, Plaintiff must show that the conduct was "so egregious, numerous, and concentrated as to add up

to a campaign of harassment." *Ford v. West*, 222 F. 3d 767, 775 (110th Cir. 2000). An employee alleging hostile environment harassment must show that the harassing conduct was "severe and pervasive" under both subjective and objective standards. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998). In other words, the conduct must be that which "a reasonable person would find hostile and abusive". *Id*. In determining whether the conduct was objectively severe, the Court considers "all the circumstances" including the frequency of the conduct, its severity, whether it is "physically threatening or humiliating, or a mere offensive utterance," and whether it "unreasonably interferes with an employee's work performance." *Id*.

Here, Plaintiff cannot establish that the alleged conduct was sufficiently severe or pervasive to create an environment that a reasonable person would find hostile or abusive. The alleged conduct does not depict a workplace "permeated with discriminatory intimidation, ridicule, and insult," sufficiently severe or pervasive to alter her working environment. *MacKenzie v. City and County of Denver*, 414 F.3d 1266 at 1280 (10th Cir. 2005).

Indeed, unlike a typical hostile environment claim, most of the alleged "harassing" acts were rationally justified employment decisions that were applied equally to other employees. Plaintiff was not allowed to ride in her husband's patrol car while he was on duty, or permitted to wear a School Resource Officer uniform without the full equipment, for safety reasons. She cannot point to any similarly situated employee who was treated differently in these aspects.

The same is true for Plaintiff's alleged denial of light duty.  After providing Plaintiff with 247 hours of light duty, more than any deputy with an off-duty injury since at least 2002, Defendant ceased providing Plaintiff with light duty work. This "denial" was only for a period of several weeks, as Defendant again offered to provide light duty after Plaintiff's second

surgery. As to the donated time, Wegener determined that Plaintiff has already received so much that providing further donated time would be an undue burden on an already small staff.

Defendant did not allow Plaintiff to sit for a detective test because it was administered on a date when she had not been released even to light duty. Defendant posted a job for a deputy position in December 2011 because Kelley Reynolds was entering the military. Plaintiff's subjective belief that the posting was for her position was unsupported speculation, not "harassment" by Defendant.

The only alleged acts that were not simply rational employment decisions are: 1) Reynolds' failure to back her up at a school in May 2011; 2) co-workers "ostracizing" her when she began light duty in August 2011; and 3) Tonjes' "outburst" on August 17, 2011.

These three isolated incidents over a four month period fall far short of the "egregious, numerous, and concentrated" standard sufficient to support a hostile environment claim. *See e.g. Keller v. Crown Cork & Seal, USA, Inc*, 2012 WL 3196002, *1-2 and *5-6 (10th Cir. 2012)(loud, heated remarks and comment to "stop complaining" not sufficient to show retaliatory hostile environment); *Jones v. Wichita State University*, 528 F.Supp.2d 1182, 1193 (10th Cir. 2007) ("as a matter of law, cold shoulder treatment" not materially adverse); *Duncan v. Manager, Dep't of Safety, City & County of Denver*, 397 F.3d 1300, 1314 (10th Cir. 2005) (failure to provide backup and one angry outburst by lieutenant not materially adverse).[4] This

---

[4] Even if the Court considered the time-barred alleged acts, which it should not, Plaintiff has still not alleged facts sufficient to demonstrate a hostile work environment. The eight "acts" occurred over a thirteen month period, and they were not harassment. Failing to formally discipline Reynolds is not a "retaliatory act" toward Plaintiff. *Daniels v. UPS, Inc.,* 797 F.Supp. 2d 1163, 1195-1196 (D.Kan. 2011). Write-ups that did not affect her job are not materially adverse. *See Sunderman v. Westar Energy, Inc.*, 307 Fed. Appx. 224, 228 (10th Cir. 2009) (write-up, which did not have any adverse consequences on employment and was later removed from file, not retaliatory adverse action). Failure to provide backup is not a material adverse action *Duncan v. Manager, Dep't of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1314 (10th Cir. 2005); nor is denial of training or denial of a requested shift.

case involves the very type of "trivial harms" that *Burlington* noted that Title VII was not intended to address. *Burlington*, *supra*, at 69, quoting *Oncale v. Sundowner Offshore Serives, Inc.*, 523 U.S. 75, 80 (1998).

ii.  No causal connection[5]

Even if Plaintiff could demonstrate that the "hostile environment" was sufficient to constitute a material adverse action, which she cannot, she cannot demonstrate a causal connection between any such action and either protected activity, her complaints regarding Kelley Reynolds and John Tighe.   A plaintiff asserting a retaliation claim "has the ultimate burden of persuasion" to demonstrate that Defendant's conduct was "the result of intentional retaliation." *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1263 (10th Cir. 1998).

Plaintiff fails to connect any specific "retaliatory" act with either protected activity. Rather, while acknowledging the lack of temporal proximity, she argues generally that the "clear animosity" expressed by Reynolds, Paige, and Hardey is sufficient to show a causal connection (presumably because of her complaint of Reynolds, although she does not specify such).

First, all of this conduct apart from the alleged failure to back Plaintiff up in May 2011 is time barred.  As to Reynolds' conduct, Plaintiff asserts only that he failed to back her up on two occasions, once <u>eleven months</u> after she complained about him, and once <u>eighteen months</u> later.

---

*Hartley v. Dep't of Agriculture*, 2010 WL 5865371, *4 (D. Colo. 2010)(denial of training); *Daniels*, *supra*, at 635-636 (denial of requested shift). This leaves only Morgan's "traitor" remark, Paige calling Plaintiff at home, and Hancock's advice regarding an attorney. Taken in context, these actions are not sufficient to constitute a hostile environment.

[5] Independent of the "causal connection" requirement needed to sustain a claim of retaliation, as part of her hostile work environment claim, Plaintiff bears the additional burden of showing that the harassment was based on retaliatory animus. *Gorny v. Salazar*, 413 Fed. Appx. 103,112 (10th Cir. 2011).  Plaintiff's failure to demonstrate this connection constitutes one more reason that she cannot withstand summary judgment. However, as the same reasoning applies to the lack of causation, that argument will not be reiterated in the context of the hostile environment aspect of Plaintiff's claim.

She fails to show that these actions were based on a retaliatory animus. *See Proctor v. UPS*, 502 F.3d 1200, 1208 (10th Cir. 2007) (four months too large a gap to establish causal connection).

As to Paige, Plaintiff has asserted only that she complained of his communications over dispatch, with no link at all to her complaint of Reynolds.  The only assertion she has made about Hardey is that he wrote her up twice. However, there is no evidence that his write-ups were made in retaliation for the complaint against Reynolds, or that he was even aware of it.

Plaintiff also argues that Hancock's comment about her baby was evidence of retaliatory animus. While admittedly in poor taste, there is no evidence to suggest that this comment, made eighteen months after she resigned and three and a half years after her complaint about Reynolds, was related to her complaint. This speculation fails to provide an adequate nexus. *Lunow v. City of Oklahoma*, 61 Fed. Appx. 598, 608 (10th Cir. 2003).

Plaintiff makes no reference whatsoever to her complaint about Tighe, essentially conceding the lack of connection between this complaint and any action that occurred thereafter. Plaintiff simply cannot show any causal connection between either protected activity and any "adverse" action.

B.  Plaintiff cannot Demonstrate Pretext

As Plaintiff acknowledges, an employee may show pretext by revealing weaknesses, implausibilities, or contradictions in the employer's actions, or by demonstrating that similarly situated employees were treated differently.  Plaintiff, however, offers no such evidence. Instead, as evidence of pretext, she refers to the very actions she alleges are retaliatory, erroneously claiming either that Plaintiff was treated differently or questioning Defendant's non-discriminatory reason for these actions.

Each of Plaintiff's attempts to show disparate treatment fails.  Plaintiff argues that she was initially denied long gun training. In addition to being time barred, this is not evidence of pretext as Plaintiff cannot demonstrate that any other employees were more promptly provided training.  Likewise, Plaintiff cannot show that any other employees were permitted to wear a uniform that did not include the equipment of which she complained. While Plaintiff claims that other married couples were allowed to be in the office together, she cannot show that any of the couples to whom she compares her situation involved two patrol deputies, one of whom was working on restricted duty.  In fact, the evidence is undisputed that the other couples did <u>not</u> involve two patrol deputies.  Plaintiff also cannot show that any patrol deputies on light duty were allowed to ride to work with their <u>spouses</u>.

Plaintiff's attempts to show inconsistencies also fail. Wegener testified that he would not allow Plaintiff to receive more donated time because she had already received a sufficient amount of donated time and it was becoming an undue burden on a small department. Further, Plaintiff had already received more light duty than any other deputy with an off-duty injury in the prior decade. Likewise, she cannot point to any other employee who was allowed to receive more donated time. There are no inconsistencies in Wegener's explanation for cutting off her donated time or denying her leave for a several week period before her second surgery.

It is not clear what point Plaintiff is trying to make with reference to Tonjes' claim that he wanted to change her light duty shift.  Tonjes observed that Plaintiff was talking rather than getting work done; that Kimsey did not share this observation is irrelevant.  There is again no evidence that Plaintiff was treated differently than any other employees.

None of the actions alleged are evidence of pretext.  Plaintiff cannot demonstrate any disparate treatment or show that Defendant's were inconsistent or contradictory.  For this patent lack of a connection between any protected activity and any retaliation alone, Plaintiff cannot withstand summary judgment.

### C.   Plaintiff cannot demonstrate Defendant's Liability.

Even if Plaintiff could demonstrate sufficiently pervasive and severe conduct, which she cannot, she must demonstrate that Defendant is liable for these actions[6].  An employer is not liable for co-workers' retaliatory harassment unless its supervisory or management personnel either: 1) orchestrated the harassment, or 2) knew about the harassment and acquiesced in it in such a manner as to condone and encourage the co-workers' actions. *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1264 (10th Cir. 1998).  Thus, an employer is absolved of liability for acts of harassment of its employees "if it undertakes remedial and preventative action reasonably calculated to end the harassment." *Duncan v. Manager, Dep't of Safety, City & County of Denver*, 397 F.3d 1300, 1310 (10th Cir. 2005).  The plaintiff bears the burden of demonstrating that the employer's conduct was unreasonable.  *Benavides v. City of Oklahoma City*, 508 Fed. Appx. 720, 724 (10th Cir. 2013).  Plaintiff cannot meet these burdens.

It is undisputed that Defendant did not orchestrate the "harassment." Rather, the crux of Plaintiff's argument appears to be that Defendant did not respond sufficiently to her complaints. This argument fails because: a) Defendant responded adequately to the two incidents of which it was aware; and b) Defendant had no notice of any other conduct. *Adler v. Wal-Mart*, 144 F.3d 664, 673 (10th Cir. 1998).

---

[6] Plaintiff concedes that the alleged retaliation was done by co-workers and that the negligence standard should apply.

Plaintiff first argues that Defendant's response to the Reynolds complaint was inadequate because he was not disciplined.  However, an employer need not take disciplinary action against an accused harasser.  The actions must be "reasonably calculated to end the harassment." *Id*. at 676.  Here, Defendant removed Reynolds as Plaintiff's FTO so that she would not have to work with him, and told him that his comment was not acceptable.  There is no evidence that this action was insufficient. *See e.g. Star v. West*, 237 F.3d 1036 (9th Cir. 2000) (verbal reprimand and transfer of accused harasser to another shift reasonably calculated to end harassment).  Although Plaintiff claims that Reynolds failed to back her up eleven and then eighteen months later, this is insufficient to show that Defendant's response was inadequate. *Adler*, *supra, at 677* (while not the only factor, stoppage of harassment demonstrated effectiveness; irrelevant that three months later harasser made discriminatory comment where there was no temporal proximity).

Plaintiff also argues that Defendant should have disciplined Tighe. Again, Defendant's actions were reasonably calculated to end the harassment, and they did.  Tighe was told that his behavior was inappropriate, and Plaintiff's request to leave the SRO position was granted.  There is no evidence that Tighe ever came in contact with Plaintiff again, let alone harassed her.

As to the other alleged actions, Plaintiff did not put Defendant on notice.  It is noteworthy that Plaintiff did not even initiate the original 2009 complaint regarding Kelley Reynolds, but told her then boyfriend Kolby Martin, who reported the complaint to Sergeant Brown. Plaintiff alleges that she complained to Brown about Paige and Hardey's "retaliatory harassment." However, the record cited shows only that Plaintiff did not like Paige's radio communications. There is no evidence that Plaintiff reported this action as harassment or felt that it was

retaliatory, so there was no reason for Brown to take any action. Moreover, Plaintiff's "complaint" to Brown (which is also time barred) did not put Defendant on notice of the action. *Adler*, *supra*, at 673 (knowledge not imputed to employer unless plaintiff reports harassment to management–level employees); T*unget V. BOCC*, 992 P.2d 650 (Colo. App. 2000)("the sheriff, not the county or board, has the right of control with respect to deputies.")[7]

Plaintiff also claims that she complained to Tonjes about Reynolds not providing back up on one occasion in May 2011. However, she again failed to give notice to the Sheriff, undersheriff, or anyone with authority to take action.

Likewise, Plaintiff did not complain to Defendant about Tonjes himself, whom she alleges committed most of the few timely acts (not allowing her to ride with Kolby, causing co-workers to "ostracize" her, and the August 17, 2011 meeting in which Tonjes allegedly yelled at Plaintiff).

Ironically, Plaintiff makes a point of noting that Undersheriff Gore had authority to take some disciplinary actions, short of termination. However, it is undisputed that Plaintiff complained neither to the Sheriff nor the Undersheriff about any of these actions.

Plaintiff cannot raise a genuine issue of fact as to whether Defendant orchestrated or condoned the alleged harassment; summary judgment is appropriate on this ground alone.

## II.    CONSTRUCTIVE DISCHARGE

Plaintiff argues that the four factors set forth in *Narotzky v. Natrona Cnty Mem'l Hosp. Board of Trustees*, 610 F.3d 558, 563 (10th Cir. 2010) do not apply because there was no forced

---

[7] *See also Vance v. Ball State*, 133 S.Ct. 2434, 2443 (2013)(limiting "supervisor" in Title VII cases to one who has authority to "effect significant change in employment status," such as hiring, firing, failing to promote, or a decision causing a significant change in benefits).

choice between resignation and termination. Plaintiff cites no support for this proposition, and as set forth in Defendant's motion, evaluating Plaintiff's resignation in light of these factors results in a finding that Plaintiff was not constructively discharged.

However, even without the application of these specific factors, Plaintiff still cannot demonstrate a genuine issue of material fact as to whether she was constructively discharged. She cannot demonstrate that, at the time of her resignation, working conditions were so intolerable that a reasonable person in the employee's shoes would feel forced to resign. *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004).

The alleged conduct regarding Paige, Reynolds, and Hardey occurred in 2010, more than a year before her resignation.  These incidents are insufficient because they are time barred, they do not add up to an "intolerable" environment, and they are far too attenuated in time from Plaintiff's resignation to justify it.

Likewise, the incident about Tighe is wholly irrelevant to Plaintiff's resignation. It occurred eight months prior to her resignation, it was investigated and handled, and Plaintiff never came into contact with Tighe again.

As to the August 2011 meeting with Tonjes, one "angry interrogation" of Plaintiff is not sufficient to establish even a claim of hostile environment, let alone support a claim for constructive discharge. *See Duncan v. Manager, Dep't of Safety, City & County of Denver*, 397 F.3d 1300, 1314 (10th Cir. 2005); *Johnson v. Weld County*, 594 F.3d 1201, 1217 n. 6 (10th Cir. 2010).

The issues surrounding Plaintiff's period of light duty do not demonstrate a constructive discharge.  To the contrary, Defendant provided Plaintiff wide latitude in accommodating her

work restrictions.  She was given more light duty than any deputy with an off-duty injury, and she was only "denied" light duty for a period of several weeks between September 26, 2011, and her October 18, 2011, surgery. Despite that she had exhausted her FMLA leave, Defendant continued to extend her leave months beyond its expiration.  She was not permitted to sit for the detective test in November 2011 for the very reason that her doctor had not cleared her to return to work in any capacity.

Lastly, Plaintiff does not, and cannot, respond to the fundamental glaring weakness in her constructive discharge claim: she cannot have been subject to an intolerable work environment when she <u>had not been in the workplace</u> for over three months.

The conduct Plaintiff alleges falls far short of the "high bar" she must meet to demonstrate constructive discharge. *Poorbaugh v. BOCC*, 2013 WL 5799910  (10th Cir. 2013) (plaintiff's resignation after exhaustion of FMLA was voluntary; three "mildly severe" and "mildly embarrassing" outbursts by supervisor insufficient to sustain constructive discharge claim when she could have returned after medical leave); *Fryer v. Coil Tubing Services, LLC*, 415 Fed. Appx. 37, 46-47 (10th Cir. 2011) (denial of light duty work and loss of short term disability did not render plaintiff's work environment "intolerable.").

Plaintiff cannot raise a genuine fact as to whether she was constructively discharged and summary judgment is appropriate on this claim.

WHEREFORE, Defendant respectfully requests that the Court GRANT its motion for summary judgment.

Dated this 30th day of April, 2014.

Respectfully submitted,

*S/ Kristin Anderson George*
Cathy Havener Greer
Kristin Anderson George
Wells, Anderson & Race, LLC
1700 Broadway, Suite 1020
Denver, CO 80290
T: 303-820-1212
Email: cgreer@warllc.com; kageorge@warllc.com
**ATTORNEYS FOR THE DEFENDANT**

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on April 30, 2014, a true and correct copy of the above and foregoing **DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

Ralph E. Lamar, Esq.
Email: ralphlamar@ymail.com

F. J. "Rick" Dindinger, II, Esq.
Email: frederick@dindingerlaw.com

*S/ Barbara McCall*
Barbara McCall
Email: bmccall@warllc.com