# Transcript of the Testimony of:
# **Cindy Gharst**

**Date:** January 17, 2014

Abby Martin v. Fred Wegener, in his official capacity as Sheriff of Park County, CO



Mile High Court Reporting and Video, Inc.
Phone: 303-202-0210
Fax: 303-205-0034
Email: contact@milehighreporting.com
milehighreporting.com

Exhibit 21

Deposition of: Cindy Gharst - January 17, 2014
Abby Martin v. Fred Wegener, in his official capacity as Sheriff of Park County, CO

Page 66

1 that she had had surgery?
2     A    Correct.
3     Q    What she was asking to do in sitting for a
4 test was to sit, correct?
5     A    Yes.
6     Q    Did it occur to you that she had the ability
7 to sit for the test and that sitting for a test was not
8 actually working?
9         MS. GREER:  Objection.  Form.  Go ahead.
10     A    The concern was, if she wasn't released to
11 come to work, even in a light-duty capacity, which
12 might entail sitting for several hours, it's also in
13 the work environment, she wasn't released to be in the
14 work environment.
15         And in my opinion, sitting for a test, which
16 requires sitting, maybe not taking a break, maybe not
17 being able to get up, I wanted to make sure that the
18 doctor was going to release her for the test, sitting
19 in our offices for possibly all day, and then leaving.
20         And her release wasn't until the 29th, for
21 even light duty.
22     Q    (By Mr. Lamar) Do you know how long the test
23 took?
24     A    I don't know.
25     Q    Did you ask anyone how long the test would

Page 67

1 take?
2     A    No, I didn't.  I based that on...
3     Q    You made an assumption?
4     A    Well --
5         MS. GREER:  Objection.  Form.
6     A    Other testing positions that I have been
7 involved in do require sitting because they also wait.
8 They may not sit for a test for very long, but waiting
9 through the day for the process.
10     Q    (By Mr. Lamar) How long in your experience is
11 the actual testing procedure for a detective position?
12         MS. GREER:  Objection.  Form.
13     A    I do not have that answer.
14     Q    (By Mr. Lamar) And you didn't ask anyone at
15 the time how long the actual sitting part for the test
16 would take, correct?
17     A    No, I did not.
18         (Deposition Exhibit 19 was marked for
19 identification.)
20     Q    Exhibit 19, Ms. Gharst, is a memo to Abby
21 Martin dated November 16 from Sheriff Wegener regarding
22 the assignment of light duty for her on November 29.
23         Did the sheriff discuss with you, before he
24 sent this letter, that he wanted to return her to
25 light-duty work?

Page 68

1     A    I believe I was aware that he was going to
2 return her to light duty.
3     Q    Did he explain to you why he was able to
4 return her to light duty in November when her
5 light-duty assignment had ended on September 26?
6     A    I don't believe we had that discussion.
7         (Deposition Exhibit 20 was marked for
8 identification.)
9     Q    Ms. Gharst, I'm showing you what's been
10 marked as Exhibit 20, and the first page is a letter
11 from Darold Killmer and the remaining pages consist of
12 the Charge of Discrimination.  I'm not sure if one of
13 these is missing the very last page, because I have two
14 on mine.  Should say 000142?
15     A    Yes.
16         MR. LAMAR:  I think Ms. Greer's may not have
17 the very last page.
18         MS. GREER:  Mine does not have the very last
19 page.
20     Q    (By Mr. Lamar) Do you remember receiving a
21 copy of the Charge of Discrimination that was filed by
22 Ms. Martin shortly after the 6th of January 2012?
23     A    Yes.
24     Q    Were you asked to conduct an investigation
25 into the charges that she made in her Charge of

Page 69

1 Discrimination?
2     A    No.
3     Q    Did you assist in preparing Park County's
4 response to her Charge of Discrimination?
5     A    I assisted in compiling documents in support
6 of the response.
7     Q    But you didn't actually talk to any
8 individuals --
9     A    No.  Sorry.
10     Q    -- to determine -- that's all right -- the
11 accuracy or veracity of Ms. Martin's allegations?
12         MS. GREER:  I would object to the extent that
13 any communications occurred with the county attorney
14 and instruct you not to answer.
15     Q    (By Mr. Lamar) Did you speak to any of the
16 individuals whom she alleged, from a factual
17 perspective, had either harassed her or retaliated
18 against her?
19     A    No.
20     Q    Did you speak with any of the officers in the
21 chain of command to find out whether she had made any
22 of the complaints that she alleged in her Charge of
23 Discrimination?
24     A    No.
25     Q    Do you remember approving and submitting a

18 (Pages 66 to 69)

Exhibit 21

Deposition of: Cindy Gharst - January 17, 2014
Abby Martin v. Fred Wegener, in his official capacity as Sheriff of Park County, CO

Page 70

1  posting for a job position as a deputy sheriff in
2  December of 2011?
3      A   Yes.
4      Q   What caused you to prepare that posting?
5      A   Sarah Kimsey, the business manager, requested
6  that I put a posting for deputy; and the reason was,
7  anticipating Kelley Reynolds was going to be going into
8  the Army; the pool that we had already established, we
9  didn't have a pool anymore, so that posting was made to
10  collect applications to establish a pool.
11         (Deposition Exhibit 21 was marked for
12  identification.)
13      Q   Is this the posting that you approved,
14  Ms. Gharst?
15      A   Yes.
16      Q   And it had nothing to do with the fact that
17  Abby Adam, Abby Martin, had been out on light duty and
18  that there were issues about when she might be released
19  to return to full duty?
20      A   No, it had nothing to do with that.
21         (Deposition Exhibit 22 was marked for
22  identification.)
23      Q   Ms. Gharst, did you see a copy of this letter
24  that Sheriff Wegener wrote to Abby Martin on
25  December 6, 2011?

Page 71

1      A   Yes.
2      Q   Did Sheriff Wegener talk to you about his
3  letter to Abby Martin before it was sent out?
4      A   I don't know that we spoke about this letter
5  before he sent it specifically.
6      Q   Did he ever explain to you why he was not
7  approving any additional donated sick time to cover the
8  upcoming anticipated time off for her?
9      A   I don't think we discussed that topic.
10      Q   As of December 6, 2011, were you aware of
11  whether Abby Martin was still doing light-duty work for
12  the sheriff's department?
13      A   As of December 6 Abby was not doing light
14  duty because her doctor changed her light-duty
15  restrictions on December 1, I believe.
16      Q   What was your understanding as to the nature
17  of the change?
18      A   Abby contacted her doctor because she was
19  concerned about taking her pain medication and being
20  able to drive a car to return to Fairplay.
21      Q   And she had previously, to your knowledge,
22  been allowed to be driven by her husband for a period
23  of time to her light duties?
24      A   In August.
25      Q   Does the county have any specific policies

Page 72

1  about getting people to and from their light-duty
2  positions?
3      A   No.
4      Q   Do you know whether the sheriff's department
5  has a written policy regarding getting people to and
6  from their light-duty assignments by other employees?
7      A   I'm not aware of a policy.
8      Q   Did Sergeant Tonjes explain to you why a
9  decision had been made that Kolby Martin was no longer
10  going to be allowed to drive his wife to work while she
11  was on light duty?
12      A   The concerns were that, I believe, Kolby was
13  scheduled and -- for the Platte Canyon/Bailey side of
14  the county; and in order for him to bring Abby to
15  Fairplay, he had to go all the way to Fairplay and then
16  backtrack to Bailey. It was inefficient from a time
17  standpoint as well as -- well, time and the mileage
18  driven.
19         Secondly, if there was some sort of call or
20  emergent situation and Abby's in the vehicle as a
21  civil- -- on light duty at that point, that was not the
22  best -- in the best interest of Abby or the county
23  either.
24      Q   Did you have any role in the decision to
25  change that situation, from allowing Kolby to drive

Page 73

1  her?
2      A   No.
3      Q   Did you ask Welles Tonjes why he allowed it
4  in the first place and then was changing his mind?
5      A   No, I didn't.
6         MS. GREER: Counsel, when it's a good time,
7  can we take a break?
8         MR. LAMAR: Sure. We can take one now.
9         (A recess was taken from 10:51 a.m. to
10  10:55 a.m.)
11      Q   (By Mr. Lamar) I'm backtracking a little bit
12  to the situation with Abby Martin's complaint about
13  Commissioner Tighe. We talked about whether you
14  informed them of the complaint.
15         Did you end up informing them of the results
16  of your investigation into the situation?
17      A   I really don't remember.
18      Q   In connection with your duties as the HR
19  administrator, did you regularly meet with the
20  commissioners?
21      A   Do you mean in formal sense, or...
22      Q   Well, do the commissioners have offices in
23  the same building that you worked?
24      A   Yes.
25      Q   And were those commissioners there on a

19 (Pages 70 to 73)

Deposition of: Cindy Gharst - January 17, 2014
Abby Martin v. Fred Wegener, in his official capacity as Sheriff of Park County, CO

81

1                        AFFIDAVIT

2          I, CINDY GHARST, have read my deposition and

3    it is true and accurate, except for any changes or

4    corrections now indicated by me on the Amendment sheet.

5                 Amendment sheet attached    (  )

6                 No changes to testimony     ( ✓ )

7

8                 CINDY GHARST

9

10         SUBSCRIBED AND SWORN to before me this

11   date  February 7, 2014        .

12

          My commission expires  1/13/14    .

13

14

     NOTARY PUBLIC

15

16   1150 Castello Ave

     STREET ADDRESS

17

18   Fairplay Co 80440

     CITY, STATE, ZIP

19

20   Return to:  MILE HIGH COURT REPORTING & VIDEO, INC.
                 14143 Denver West Parkway, Suite 100A
21               Golden, Colorado  80401

22

23   PATRICIA STOINSKI
     NOTARY PUBLIC
     STATE OF COLORADO
     NOTARY ID 20014036889          ORIGINAL
24   MY COMMISSION EXPIRES JANUARY 13, 2018

25

Exhibit 21

# AMENDMENT TO DEPOSITION

I, _____, wish to make the following changes to my testimony as originally given:

| PAGE | LINE | SHOULD READ | REASON |
|------|------|-------------|--------|
|      |      |             |        |
|      |      |             |        |
|      |      |             |        |
|      |      |             |        |
|      |      |             |        |
|      |      |             |        |
|      |      |             |        |
|      |      |             |        |
|      |      |             |        |

Subscribed and sworn to before me this date: _____

Signature of Notary: _____

Deponent Signature: _____

My Commission expires: _____

**Mile High**
Court Reporting & Video, Inc.

14143 Denver West Parkway, Suite 100
Golden, Colorado 80401
303-202-0210 contact@milehighreporting.com

Exhibit 21

Deposition of:  Cindy Gharst - January 17, 2014
Abby Martin v. Fred Wegener, in his official capacity as Sheriff of Park County, CO

Page 82

CERTIFICATE

1
2       I, Melissa Emily Huston, a Registered
3   Professional Reporter, Notary Public of the State of
4   Colorado, certify that before the deposition the
5   witness was sworn by me to testify to the truth, and
6   that the foregoing is a true transcript of the
7   questions asked, testimony given, and proceedings had.
8
9       I further certify that I am not related to
10  any party herein, nor their counsel, and have no
11  interest in the result of this litigation.
12
13      IN WITNESS WHEREOF, I have hereunto set my
14  hand and seal this _____ day of _____, 2014.
15
16
17      _____
        Melissa Emily Huston, RPR
18      My Commission expires 4/14/2015
        Notary ID:  19994009481
19
20
21
22
23
24
25

RALPH E. LAMAR, IV, ESQ.
Law Office of Ralph Lamar
8515 Braun Loop
Arvada, Colorado 80005

Re:  Abby Martin v. Fred Wegener
Civil Action No.:  1:13-cv-00884-PAB-KMT
Deposition of CINDY GHARST
Taken January 17, 2014

Dear Mr. Lamar:
The above-referenced original deposition is being filed
with you this date: _____.

Pursuant to the governing Rules of Civil Procedure, the
above-mentioned deposition is being filed:
_____ signed, with no changes
_____ signed, with changes, a copy of which is attached
_____ unsigned, no changes
_____ unsigned, with changes, a copy of which is
      attached

_____ unsigned, pursuant to agreement of counsel that
      the deposition may be reviewed and signed at or
      before the time of trial

_____ unsigned, our office having received notice that
      the case has settled
_____ signature waived at the time of deposition
_____ signature not required

MILE HIGH COURT REPORTING & VIDEO, INC.

cc:  Original transcript
     Cathy Havener Greer, Esq.

January 27, 2014

CATHY HAVENER GREER, ESQ.
Wells, Anderson & Race, LLC
1700 Broadway, Suite 1020
Denver, CO 80290

Re:  Abby Martin v. Fred Wegener
     Deposition of CINDY GHARST
     January 17, 2014

Dear Ms. Greer,
Enclosed with your copy of the above-referenced
deposition is the signature page from the Court's
original transcript.
In accordance with the Rule, please have the witness
read and sign his or her testimony, then return the
executed signature page and any amendment sheets used
to us within 35 days of the date of this letter.

Sincerely,

MILE HIGH COURT REPORTING & VIDEO, INC.
Encl.
cc:  Original transcript
     Ralph E. Lamar, IV, Esq.

22 (Pages 82 to 84)